T.C. Memo. 2001-323

UNITED STATES TAX COURT

WILLIAM B. BERRY AND MARJORIE S. BERRY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6786-00.                    Filed December 28, 2001.

<u>Marcia Allen Broughton</u>, for petitioners.

<u>Julia L. Wahl</u>, for respondent.

MEMORANDUM OPINION

DAWSON, <u>Judge</u>:  This case was assigned to Special Trial
Judge Daniel J. Dinan pursuant to the provisions of section
7443A(b)(5)and Rules 180, 181, and 183.[1]  The Court agrees with

---

[1]  Unless otherwise indicated, section references are to the
Internal Revenue Code as amended, and Rule references are to the
Tax Court Rules of Practice and Procedure.

and adopts the opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

DINAN, Special Trial Judge: Respondent determined that petitioners are not entitled to an abatement of interest on Federal income taxes for the period January 1, 1992, through November 5, 1998, relating to their 1983 through 1986 and 1988 through 1991 taxable years. The only issue for decision is whether respondent abused his discretion in failing to abate the assessment of interest.

Background

Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. On the date the petition was filed in this case, petitioners resided in Vero Beach, Florida, and neither petitioner had an individual net worth exceeding $2 million.

In the years 1983 through 1985, petitioners invested a total of $150,000 in a limited partnership known as Green Leasing Associates. Green Leasing was organized and marketed by Kent Klineman or an affiliated entity and by CIGNA Securities, a division of Connecticut General Life Insurance Co. Green Leasing was one of four partnerships which made up another partnership known as Madison Leasing. These partnerships had over 100

partners in total.  Petitioners were notified by respondent on May 9, 1988, that an examination of Green Leasing was underway with respect to taxable year 1984.

From August 1990 through November 1991, petitioners received several items of correspondence from CIGNA explaining the status of respondent's ongoing examination of Green Leasing and the other partnerships.  This correspondence incorporated analysis by the accounting firm Coopers & Lybrand.  The first letter petitioners received, dated August 22, 1990, described a "worst case" outcome to settlement negotiations.  The letter specifically stated that negotiations were ongoing and that petitioners should not expect any eventual settlement offer to contain the same terms.

Petitioners filed amended Federal income tax returns for the taxable years 1983 through 1987 in December 1990 and for the taxable years 1988 and 1989 in January 1991.  They paid the additional tax and interest shown thereon at the time they filed the amended returns.  The IRS processed the amended returns reporting tax due (1983 through 1985) and assessed the reported tax.  The IRS did not process those showing refunds (1986 through 1989) because of the unresolved issues relating to Madison Leasing.  Petitioners filed the amended returns partially in response to this Court's opinion in Thornock v. Commissioner, 94 T.C. 439 (1990).

The correspondence from CIGNA which petitioners received after filing the amended returns contained information regarding the ongoing negotiations. In addition, the correspondence contained language implying that a settlement was currently available, and that individual partners had begun entering into final settlements with the IRS. One such letter, dated August 19, 1991, stated:

> The number of inquiries [directed to the IRS regarding settlement, sent pursuant to an earlier letter from CIGNA] has prompted the IRS to request that we clarify what * * * [the partners] view as the limitations of their involvement in individual cases. Essentially, investors are requested to contact the IRS by mail only after they have made the decision to pursue the proposed settlement. * * * Those who do not have a docketed case may either wait for the local IRS Service Center to contact them with the settlement offer, or simply file amended tax returns which reflect the terms of the settlement * * * .

However, the letters also stated that the IRS was dealing first with those cases which had been docketed in this Court, followed by those which had not (those involving later tax years). As of October 29, 1991, investors were informed that settlement offers for nondocketed cases "should be communicated within the next few months." Petitioners did not have a case docketed in this Court. Because no offer had been made directly to petitioners by the IRS, petitioners' accountant, William J. Quinn II, wrote to the IRS on December 3, 1991, and again on January 22, 1992, requesting a copy of the settlement offer which he had learned about through the correspondence from CIGNA. Petitioners

received no immediate response. A letter dated May 7, 1992, from Coopers & Lybrand to a CIGNA vice president states that settlements were still being entered into between the IRS and taxpayers with docketed cases.

The IRS revenue agent assigned to audit Madison Leasing for the taxable years 1983 through 1987 completed his examination with respect to the first year on March 29, 1988, and with respect to the final year on April 2, 1991. On January 28, 1993, a proposed notice of final partnership administrative adjustment (FPAA) pertaining to Madison Leasing for taxable years 1983 through 1987 was completed and submitted for approval to IRS Regional Counsel. The finalized FPAA was issued on April 26, 1993. On July 19, 1993, a petition was filed in this Court seeking review of respondent's determinations made in the FPAA. A decision was entered in that case by the Court upon respondent's motion on July 28, 2000.

The Madison Leasing examination was assigned to Appeals officer Marco Minervini in October 1993. At that time, Mr. Minervini was instructed to offer a settlement to the partners of four partnerships making up Madison Leasing, including Green Leasing. In addition to Madison Leasing, Mr. Minervini was working on other Klineman-related partnerships which altogether comprised more than 1,000 individual partners. Over the ensuing months, Mr. Minervini worked on the settlement package fairly

steadily, coordinating with IRS officials and counsel and with representatives of the partnerships. He was instructed to begin extending the settlement offer to individual partners in August 1995.

Petitioners--along with other partners of Green Leasing-- were sent a letter from the IRS dated November 30, 1995, extending the final settlement offer. Petitioners accepted this offer by letter dated January 24, 1996. The IRS then sent petitioners an initial proposed closing agreement on August 2, 1996, incorporating the terms of the settlement offer. A revised closing agreement--resulting from changes made because of taxpayer inquiries--followed from the IRS on November 19, 1996. This revised agreement was executed by petitioners on December 5, 1996, and for respondent on May 9, 1997. Thereafter, also in May 1997, the IRS in New York transmitted the executed closing agreement to the Atlanta Service Center--the IRS service center covering petitioners at that time--for determination of petitioners' tax liabilities resulting from the execution of the agreement.

After the closing agreement was transmitted to Atlanta, negotiations began between the IRS and petitioners. The IRS sent petitioners initial calculations of their tax liabilities on or around August 13, 1997. Thereafter, petitioners' accountant sent the IRS his own proposals, questions, and objections to the

changes being asserted with respect to most of the taxable years under examination. The correct tax liabilities for all of the years were contained in final determinations sent on or before October 19, 1998. Although the terms of the settlement remained substantially the same as those communicated to petitioners in 1991, the overall correct tax liability was in an amount greater than Mr. Quinn had anticipated on the basis of his understanding of those terms at that time.

Before resolution of the issues with respect to all the years involved in the settlement, the IRS began to collect assessed tax liabilities. On January 21, 1998, the IRS levied upon petitioners' bank account in connection with taxable years 1985, 1986, 1988, and 1989. The levy was not for the correct amounts of tax ultimately determined for those years. On August 31, 1998, the IRS notified petitioners that it intended to levy to collect tax owed for 1991. The amount stated in this notice also was not the amount ultimately determined to be due for that year.

Petitioners requested an abatement of interest accruing from January 1, 1992, through November 5, 1998, with respect to underlying deficiencies for tax years 1983 through 1986 and 1988 through 1991.[2] Respondent made a final determination that

---

[2] This was an amended request for abatement. According to the stipulation of facts, petitioners filed an initial request

(continued...)

petitioners were not entitled to the abatement of interest,

providing the following rationale:

> We did not find any errors or delays relating to the performance of ministerial acts, which merit abatement of interest for the period from January 1, 1992 to October 14, 1998. A ministerial act, as defined in the Code and Regulations, is a procedural or mechanical act that occurs during the processing of a taxpayer's case and does not involve the exercise of judgement or discretion.

## Discussion

Pursuant to section 6404(e)(1), as it applies in this case, the Commissioner may abate the assessment of interest on: (1) Any deficiency attributable to any error or delay by an officer or employee of the Internal Revenue Service (IRS) in performing a ministerial act or (2) any payment of any tax described in section 6212(a) to the extent that any error or delay in such payment is attributable to such officer or employee being erroneous or dilatory in performing a ministerial act. An error or delay is taken into account only (1) if no significant aspect of such error or delay can be attributed to the taxpayer, and (2) after the IRS has contacted the taxpayer in writing with respect to such deficiency or payment. Sec. 6404(e)(1).

---

[2](...continued)
that differed from the amended request. The former is not in the record, and it is unclear what the exact differences are. Respondent's final determination appears to relate to the terms of the amended request, and petitioners refer to the same in their petition.

In 1996, section 6404(e) was amended by section 301(a) of the Taxpayer Bill of Rights 2, Pub. L. 104-168, 110 Stat. 1457 (1996), to permit the Commissioner to abate interest with respect to "unreasonable" errors or delays resulting from "managerial" acts as well as from ministerial acts.  This amendment applies to interest accruing with respect to deficiencies or payments for tax years beginning after July 30, 1996.  Id. sec. 301(c); Woodral v. Commissioner, 112 T.C. 19, 25 n.8 (1999).  The amendment is therefore inapplicable in this case.  Petitioners assume in their brief that the amendment permits abatement for managerial acts which occur after July 30, 1996.  This assumption is incorrect:  the triggering date for the applicability of the amendment is the taxable year of the underlying deficiency or payment, not the date of the managerial act.

The Department of the Treasury has interpreted a ministerial act as "a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place."  Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).[3]

---

[3] The final regulations under sec. 6404 contain the same definition of a ministerial act as the temporary regulations. Sec. 301.6404-2(b)(2), Proced. & Admin. Regs.  However, the final regulations do not apply in this case because they apply only to
(continued...)

Even where errors or delays are present, the decision to abate interest remains discretionary. Sec. 6404(e)(1). This Court may order an abatement only where the Commissioner's failure to abate interest was an abuse of that discretion. Sec. 6404(i)(1). The Commissioner's exercise of discretion is entitled to due deference; in order to prevail, the taxpayer must demonstrate that in not abating interest, the Commissioner exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law. Woodral v. Commissioner, supra at 23.

We note at the outset that petitioners' arguments are fundamentally flawed because they fail to assert any correlation between an error or delay in the performance of a ministerial act by respondent and a specific period of time over which interest should be abated as a result of that error or delay. Such a correlation is required for abatement under section 6404(e). Donovan v. Commissioner, T.C. Memo. 2000-220. It is clear from the record that petitioners are seeking an abatement of interest not because of any specific ministerial act, but merely because they are dissatisfied with the amount of time it took to resolve their case. In fact, petitioners stated in the abatement request submitted to the IRS that they chose January 1, 1992, as the

---

[3](...continued)
interest accruing with respect to deficiencies or payments for taxable years beginning after July 30, 1996. Id. par. (d).

beginning date for abatement because petitioners found that the 3 years and 7 months prior to that date was a "reasonable time" for audit and settlement.

Petitioners' primary argument is that respondent abused his discretion because he failed to adequately explain his use of discretion in the final determination or during trial. Petitioners rely heavily upon the case of Jacobs v. Commissioner, T.C. Memo. 2000-123, in this argument. Specifically, petitioners emphasize our holding with respect to the Commissioner's refusal to abate interest for portions of the period September 1987 through November 17, 1991. This was a period for which the record provided few details concerning the actions of the IRS. Furthermore, the final determination letters issued to the taxpayers had cursorily concluded: "We did not find any errors or delays that merit abatement of interest in our review of available records and other information". Noting that the Commissioner is best able to know what actions were taken by IRS officers and employees, we concluded that in regard to those specific periods for which he failed to explain the basis of his refusal to abate interest, the refusal was an abuse of discretion.

We agree with petitioners that, as was the case in Jacobs, the language in the determination letter was rather cursory and possibly left out many details concerning respondent's inquiry

and decision not to abate the interest.[4]  However, unlike the situation in Jacobs, we need not merely speculate what happened during the relevant period between January 1, 1992, and November 5, 1998.  The record sufficiently supports respondent's determination that there were no ministerial acts which caused errors or delays.  The record reflects steady progress in petitioners' case from audit through final settlement.

Petitioners argue that respondent abused his discretion because he has failed to show that the length of time it took to settle petitioners' case was due to anything but ministerial errors or delays.  Petitioners again rely on Jacobs in this argument, contending that respondent has failed to show that an IRS employee exercised judgment or discretion in (a) responding to partners' requests for settlement, and (b) prioritizing or organizing the related partnership cases.

Although petitioners requested from respondent an abatement of interest accruing from January 1, 1992, through November 5, 1998, the only specific subset of time in respect of which petitioners request in their brief that we find an abuse of discretion was the period "from 1990 through 1993".  We assume

---

[4]  The language was more informative in that the determination letter in the present case specifically stated that no errors or delays relating to the performance of "ministerial acts" could be found for the period in question, and it proceeded to define the term "ministerial act" in accordance with the applicable regulation.

petitioners are referring to the period from April 2, 1991, through January 28, 1993. The IRS auditor completed his work with respect to Madison Leasing on April 2, 1991, but the proposed FPAA for Madison Leasing was not submitted for approval until January 28, 1993. Initially, we note that we cannot find an abuse of discretion in respondent's failure to abate interest for any period before January 1, 1992, because petitioners did not request that respondent exercise his discretion and abate interest accruing before that date. As for the remainder of this period, it is clear from the letters which petitioners received from CIGNA that during this time the IRS was working on resolving cases involving Madison Leasing and the related partnerships. The letters, which petitioners were receiving at least as late as October 29, 1991, indicate that current progress was being made toward settling docketed cases and beginning work on settlements for nondocketed cases. In addition, the May 7, 1992, letter from Coopers & Lybrand to CIGNA indicates progress on the settlements was ongoing. Thus, even for this period the evidence in the record shows continuing progress.

Finally, petitioners point to three specific causes of delay, though without correlating the causes with any specific timeframe for abatement. First, petitioners argue that delays were caused by the IRS's refusal to provide the settlement offer when petitioners initially requested it. As noted above, a

"ministerial act" must involve an act "that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place." Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., supra. It is clear that a decision to not extend a settlement offer to petitioners at a particular stage of an ongoing examination involving the returns of as many as 100 partners was not a ministerial act. The IRS was far from completing the prerequisite acts in late 1991 and early 1992 when petitioners requested a settlement.

Second, petitioners argue that delays were caused by respondent's failure to process the amended returns which showed refunds. There was no ministerial error in this situation either, because employees of the IRS exercised discretion in not processing all of petitioners' amended returns: They assessed the taxes shown as due on the returns, see sec. 6201(a)(1), and they did not process those returns showing refunds because the taxable years in issue were subject to an ongoing examination at the partnership level.

Finally, petitioners argue that delays were caused by respondent's failure to use the most current and accurate information in making final settlement calculations. Petitioners argue that this failure was due to (a) an IRS employee, Marilyn Parsonson, writing reports indicating the amount of tax due on

the basis of what she knew to be incomplete information regarding the taxable year 1983, and (b) IRS employees' not using the information provided on the unprocessed amended returns. It is clear from the record that, although Ms. Parsonson was initially unable to obtain the information from IRS records, she used information later obtained from petitioners or their accountant in making her settlement computations. As for the amended returns, we have already noted that the delay in processing them was not due to any error or delay in performing a ministerial act, but to the ongoing partnership examination.

Accordingly, we find no abuse of discretion in respondent's failure to abate interest in this case.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent.</u>