*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 04a0402p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

JOHN M. MEKULSIA,

    *Petitioner-Appellant,*

    *v.*

COMMISSIONER OF INTERNAL REVENUE,

    *Respondent-Appellee.*

No. 03-2304

On Appeal from the United States Tax Court.
No. 10480-00—Howard A. Dawson, Jr., Tax Court Judge.

Argued: October 28, 2004

Decided and Filed: November 18, 2004

Before: MERRITT, DAUGHTREY, and SUTTON, Circuit Judges.

_____

### COUNSEL

**ARGUED:** Terri A. Merriam, PEARSON MERRIAM, Seattle, Washington, for Appellant. Anthony T. Sheehan, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Terri A. Merriam, Wendy S. Pearson, PEARSON MERRIAM, Seattle, Washington, for Appellant. Anthony T. Sheehan, Richard Farber, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

### OPINION

_____

MERRITT, Circuit Judge. Petitioner John Mekulsia seeks interest abatement for payment deficiencies from tax years 1982 through 1987. He appealed denials by the Commissioner and the IRS Appeals Office to the Tax Court, which affirmed. Mekulsia now appeals to this Court. The primary question before us is whether or not the tax code and regulations create a ministerial-task obligation on the IRS to notify, and thereby remove from a partnership audit, a tax matters partner who is under criminal investigation. For the reasons stated below, we AFFIRM the Tax Court's holding that no such ministerial task exists.

### STATEMENT OF FACTS

Starting in 1985, petitioner Mekulsia began investing as a limited partner in cattle partnerships created, marketed and managed by Jay Hoyt. Mekulsia's investment relationship with Hoyt continued through 1996. Unfortunately for Mekulsia and thousands of other investors, Hoyt's partnerships were found to be illegal tax shelters. Hoyt is currently serving a federal prison sentence of 235 months for conspiracy

1

to commit fraud, bankruptcy fraud, and money laundering. While the scheme was active, Hoyt served as the general partner and the "tax matters partner"[1] for all the partnerships, even completing the individual tax returns for many partner-investors. Investors paid money in exchange for "units" in a certain partnership. Hoyt would then manipulate the value, purchase, sale and even existence of cattle assets in order to generate phony depreciation and losses for the partners. Losses were allocated among the limited partners in amounts necessary to zero out their incomes for tax return purposes. There is conflicting evidence and testimony regarding the degree of complicity of the individual investors. Some reports state that Hoyt's agents told the investors their payments would be a percentage of the amount they saved on their tax returns, indicating they knew from the beginning that these were not-for-profit partnerships. However, the judge in Hoyt's criminal case made a plea to the IRS to show leniency for the Hoyt victims, stating,

> the victims in this case were not people that got into this as a matter of personal greed. [They] were truly victimized by a person who is capable of the greatest deceit, deceitful practices, who deceived everyone around him, including those closest to him . . . it is my strongest recommendation that those remaining cases that remain open be resolved by denying the tax shelter, but to eliminate any penalties, or any interest that may have accumulated.

J.A. at 793 (as read into the record during Mekulsia's case before the Tax Court).

In the long government process that eventually led to his conviction in 2001, Hoyt was under criminal investigation at least four separate times. However, during none of these periods did the Commissioner act in any way to remove him as the tax matters partner for the partnership involved in Mekulsia's case.

As the IRS became aware of the irregularities in Hoyt's business practices, it conducted several audits of the partnerships' returns. Between 1989 and 1990, the IRS notified Mekulsia that it was disallowing his partnership losses from tax years 1985 and 1986 and sent Notices of Final Partnership Administrative Adjustment[2] to that effect. The losses allocated to Mekulsia in 1985 and 1986 had been carried back to 1982, 1983 and 1984 and forward to 1987. Since all these losses were derived from 1985 and 1986, all were disallowed.

Between 1989 and 1993, many of the Hoyt partnerships (including Mekulsia's) filed tax court petitions, contesting the Commissioner's determinations. While the partnerships and the IRS came close to negotiating a settlement in 1993 for all outstanding Hoyt partnership petitions relating to tax years 1980 to 1986, the agreement ultimately collapsed in 1994. The court consolidated similar cases and began moving forward to conduct trials.

In 1998, the IRS sent Mekulsia a Form 4549A-CG, Income Tax Examination Changes for years 1982 through 1987, based on his involvement in the partnership in 1985 and 1986. This form detailed the IRS position with respect to tax payment deficiencies and interest accrual. Interest accrual terminated on March 26, 2001, when Mekulsia posted a cash bond in the amount of $197,000.

---

[1] Merten's Law of Federal Income Taxation describes the tax matters partner as "the central figure of partnership proceedings. During both administrative proceedings and litigation, the tax matters partner serves as the focal point for service of all notices, documents, and orders on the partnership." The tax matters partner's powers and responsibilities include: keeping other partners informed of tax proceedings; binding non-notice partners to settlement agreements; appealing adverse court decisions; and, filing petitions in Tax Court. 9 MERTENS LAW OF FED. INCOME TAXATION § 35:358 (2004).

[2] The Final Partnership Administrative Adjustment is a notice sent by the IRS to a partnership after it has completed an audit on the partnership's tax returns. The notice informs the partnership of any adjustments that are being applied to the return. 34 Am. Jur. 2d Federal Taxation ¶ 70417 (2004).

In June 1998, Mekulsia initiated correspondence with the IRS that was interpreted as a request for interest abatement. Finding that Mekulsia's investments were actually "tax motivated transactions," under 26 U.S.C. § 6621(c), the IRS denied Mekulsia's request. In July 1998, Mekulsia appealed to the IRS Appeals office, which also issued a denial. On August 14, 2000, the IRS issued a final determination letter, re-iterating its denial of interest abatement. Mekulsia then appealed to the Tax Court under 26 U.S.C. § 6404(h), which grants the Tax Court initial appellate review over the Commissioner's refusal to abate interest. The Tax Court upheld the Commissioner's decision.

During the proceedings before the Tax Court, Mekulsia complained about the Commissioner's alleged failure to produce documents requested through both informal and formal discovery procedures. Soon after conclusion of Mekulsia's Tax Court case, his attorney received discovery documents in another Hoyt partnership case that the attorney was also litigating. In a motion to the Tax Court to reconsider or vacate its earlier decision, Mekulsia argued that the production of these documents proved that the IRS had relevant documents but had chosen not to provide them to Mekulsia. The IRS responded that the documents were unrelated to the partnership in which Mekulsia invested and that Mekulsia had failed to identify any new factual or legal basis from the documents that would support a different holding in the case. Mekulsia claimed that, because the records, practices and parties involved in all the partnerships were highly intertwined, the IRS should have produced the new documents when originally asked. The Tax Court denied his Motion to Reconsider and his Motion to Vacate; this appeal followed.

## DISCUSSION

### I. Commissioner's Decision Not to Abate Interest Was Proper

Mekulsia argues that he should receive an abatement on his accrued interest because of the Commissioner's failure either to directly remove Hoyt as the tax matters partner or to notify Hoyt of the on-going criminal investigations, which would have had the indirect effect of removing him as the tax matters partner. This argument is not persuasive.

### A. 26 U.S.C. § 6404 - Interest Abatement Statute

**(e) Abatement of interest attributable to unreasonable errors and delays by Internal Revenue Service.**–
> (1) **In general.**– In the case of any assessment of interest on –
>> (A) any deficiency attributable in whole or in part to any unreasonable error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial or managerial act, or
>> (B) any payment of any tax . . . to the extent that any unreasonable error or delay in such payment is attributable to such an officer or employee being erroneous or dilatory in performing a ministerial or managerial act,
> the Secretary may abate the assessment of all or any part of such interest for any period.

26 U.S.C. § 6404 (2004).[3]

In order to challenge successfully a denial of abatement, the taxpayer must first identify a ministerial act that was either required and not performed, or was performed but in an erroneous or dilatory manner. The regulations define ministerial act as "a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites

---

[3]The words "unreasonable" and "managerial" were added by amendment in 1996 and only apply to requests for abatement made regarding deficiencies in tax years after July 30, 1996. *See Berry v. Commissioner*, 82 T.C.M. (CCH) 1013, 2001 Tax Ct. Memo. 362, at *10. Therefore, those parts of the statute do not apply in the instant case.

to the act, such as conferences and review by supervisors, have taken place. A decision concerning the proper application of federal tax law (or other federal or state law) is not a ministerial act." 26 C.F.R. § 301.6404-2(b)(2) (2004).

The failure or inappropriate completion of a ministerial act does not mandate abatement; the statute simply says that when such an act has occurred, "the Secretary may abate the assessment" of interest. 26 U.S.C. § 6404(e)(1) (2004). A taxpayer must both demonstrate the ministerial act and prove abuse of discretion in denying the abatement. In this case, however, we need not reach the abuse of discretion question since we find that all relevant acts were discretionary and not ministerial.

### B. 26 U.S.C. § 6231(c) - Special Enforcement Areas

Mekulsia begins building his case for a ministerial act with § 6231 of the tax code. In the area of partnership taxation, the code clearly identifies "special enforcement areas," including criminal investigation of a partner for tax violations. 26 U.S.C. § 6231(c)(1)(B) (2004). When one of these areas is implicated, continuing to treat an individual partner's items as partnership items may "interfere with the effective and efficient enforcement" of the code. *Id.* § 6231(c)(2). The statute grants the Secretary of the Treasury the authority to determine when continuing to treat the items of a partner who is under criminal investigation for tax violations as "partnership items" will create enforcement problems. Therefore, the statute allows the Secretary to promulgate regulations that (1) identify when the special enforcement issues (e.g., a partner under criminal investigation for tax violations) reach the level of "interfering with effective and efficient enforcement of the tax code" and, when step one is complete, (2) "convert" that partner's items to nonpartnership status, effectively excluding him from the partnership for tax purposes.

### C. 26 C.F.R. § 301.6231(c)(5) - Criminal Investigation of Partner

Pursuant to this statutory provision, the Secretary did promulgate regulations regarding treatment of partners under criminal investigation. The regulations state that treating "items as partnership items with respect to a partner under criminal investigation for violation of the internal revenue laws relating to income tax will interfere with the effective and efficient enforcement of the internal revenue laws." 26 C.F.R. § 301.6231(c)(5) (2004). Mekulsia advocates a strict reading of the regulation's language "will interfere," leading to the conclusion that the Secretary has already exercised the discretion granted him by statute and has determined that criminal investigation of a partner will *always* disrupt enforcement. Under this reading, an investigated partner's items must always be converted into nonpartnership items and the Secretary no longer has the option to reach a different conclusion, at least not without issuing new regulations.

In this same regulation, the Secretary has provided a procedure for implementing the conversion. The items "shall be treated as nonpartnership items as of the date on which the partner is notified that [he] is the subject of a criminal investigation and written notification is sent by the [IRS] . . . . [The partnership items] shall not be treated as nonpartnership items under this section unless and until such partner is sent written notification from the [IRS] of such treatment." § 301.6231(c)(5)

The Commissioner argues that Mekulsia's interpretation would render the final sentence of the regulation, which includes the "unless and until" language, as repetitive and superfluous, in violation of accepted canons of statutory interpretation. The Commissioner reads this sentence, especially the language "unless and until," as retaining discretion for the Secretary regarding the decision to notify. Mekulsia responds that under his interpretation, the final sentence of the regulation is not superfluous but rather sets the date on which the conversion occurs. Furthermore, he asserts that the Commissioner's interpretation (retaining discretion to send a notice) would render the mandatory language of the statute (that once Secretary determines a criminal investigation interferes, the conversion "shall" take place) as superfluous.

Mekulsia argues that the interaction of the statute and regulation create a two-step process. First, a discretionary decision is made regarding whether or not to institute a criminal investigation. Second, assuming a criminal investigation has begun, the Commissioner is obliged to perform the ministerial task

of sending notice to the partner under investigation, which has the effect of causing his partnership items to be treated as nonpartnership. Mekulsia analogizes these steps to the IRS's treatment of a taxpayer's request to transfer his case to another district, an example provided in the regulations. *See* 26 C.F.R. § 301.6404-2(c) (2004). Approval of the request is discretionary, while the actual transfer is ministerial.

### D. 26 C.F.R. 301.6231(a)(7) - Tax Matters Partner

The ultimate effect of this chain of events, and the one with significance to Mekulsia, is that a partner's status as the tax matters partner for the partnership automatically terminates as soon as his partnership items are converted due to a criminal investigation. *See* 26 C.F.R. § 301.6231(a)(7)-1 (2004). Mekulsia alleges that,"had the TMP been properly removed, then the delays in the civil audit caused by the continuing criminal investigations would not have occurred and Jay Hoyt could not have served as tax matters partner for the partnerships' audits, which facilitated the concealment of his fraud and the inefficient and prolonged resolution of Mr. Mekulsia's tax liability." Mekulsia Br. at 30.

### E. Mekulsia Has Failed to Identify a Ministerial Task

The Ninth Circuit essentially rejected Mekulsia's proposed reading of the statute and regulations in a recent case involving another of Hoyt's victim-investors. *See Phillips v. Comm'r of Internal Revenue*, 272 F.3d 1172 (9th Cir. 2001). While Mekulsia attempts to distinguish the legal argument made by the taxpayer there from the one he makes now, there is actually very little difference between the two. The court in *Phillips* examined the question of "whether criminal tax investigation of a statutory tax matters partner (the TMP) does, or must, end the TMP's power to act for a partnership." *Phillips*, 272 F.3d at 1173. From 1983 to 1987, plaintiff Phillips invested in three of Hoyt's cattle partnerships. During a time when the IRS knew Hoyt was under investigation, they had him, as the partnership's tax matters partner, execute waivers of the three year statute of limitations for one of the partnerships in which Phillips was a limited partner. Phillips asserted that the investigation should have disqualified Hoyt from serving as the tax matters partner. This position holds some policy appeal since a tax matters partner is in a fiduciary relationship relative to the other partners, and a criminal investigation might easily lead him into a position where his interests are at odds with those of his partners. However, the Ninth Circuit rejected this interpretation of the statute, stating:

> It is argued, a criminal investigation imposes a mandatory obligation to end the partnership treatment. The argument is ingenious but unconvincing. Read as a whole, the regulation [26 C.F.R. § 301.6231(c)-5T] *vests discretion in the Commissioner* to notify a partner that he or she is under criminal investigation. Until such notice is given, partnership items remain partnership items.

*Phillips*, 272 F.3d at 1176 (emphasis added).

Mekulsia attempts to distinguish this case by claiming that the *Phillips* court addressed only the question of whether or not the tax matters partner status terminates *automatically* upon the start of a criminal investigation, whereas he raises the question of whether or not the Commissioner has a mandatory duty to notify (and indirectly to convert partnership items and terminate tax matters partner status). But the language and reasoning used by the Ninth Circuit, as quoted above, does not support Mekulsia's interpretation.

On these bases, the Tax Court's ruling that Mekulsia failed to identify a ministerial task is affirmed.

### II. Mekulsia's Claims Regarding Discovery and Adequacy of Commissioner's Explanations Are Without Merit

Finally, we have reviewed Mekulsia's claims concerning the Commissioner's compliance with discovery requests and the Commissioner's alleged abuse of discretion for failure to provide adequate

explanations for his decisions.  We find the District Court's opinion on these issues to be clearly articulated and correctly decided.

**CONCLUSION**

For the reasons described above, the Tax Court's holdings are AFFIRMED.