T.C. Memo. 2004-276


UNITED STATES TAX COURT


JAMES G. AND LINDA C. JAROFF, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19193-99.                    Filed December 8, 2004.


<u>Steven D. Morford</u>, for petitioners.

<u>Nhi T. Luu-Sanders</u>, for respondent.


MEMORANDUM OPINION


WOLFE, <u>Special Trial Judge</u>:  This case was assigned pursuant
to the provisions of section 7443A(b)(5) in effect when these
proceedings commenced, and Rules 180, 181, and 183.  Unless
otherwise indicated, all section references are to the Internal
Revenue Code in effect at relevant times, and all Rule references
are to the Tax Court Rules of Practice and Procedure.

By notice of deficiency, respondent determined deficiencies in petitioners' Federal income tax, additions to tax under section 6651(a), and accuracy-related penalties under section 6662 as follows:

| | | Additions to Tax/Penalties | | | | |
| Year | Deficiency | Sec. 6651(a) | Sec. 6662(h) | Sec. 6662(e) | Sec. 6662(d) | Sec. 6662(c) |
| --- | --- | --- | --- | --- | --- | --- |
| 1994 | $15,535 | $2,264 | $6,214 | $3,107 | $3,107 | $3,107 |
| 1995 | 8,837 | 507 | 3,415 | 1,707 | 1,707 | 1,707 |

Petitioners have conceded that they are liable for deficiencies of $15,535 for 1994 and $8,837 for 1995.  The remaining issues for decision are:  (1) Whether petitioners are liable for additions to tax under section 6651(a) for filing their income tax returns after the due dates and (2) whether petitioners are liable for accuracy-related penalties under section 6662.

## Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  Other facts are established by admission.  Neither petitioners nor any witnesses testified on petitioners' behalf.  When they filed their petition, petitioners resided in Scottsdale, Arizona.

Petitioner James Jaroff was employed as a computer programmer for the Software Works! of L.A. and Allied Packaging Corp. in 1994 and for Allied Packaging Corp. in 1995.  Petitioner

Linda Jaroff worked as a sales representative for the Software Works! of L.A. and Allied Packaging Corp. in 1994 and for Allied Packaging Corp. in 1995. Petitioners filed joint Federal income tax returns for 1994 and 1995 and reported combined wages of $98,078 for 1994 and $85,583 for 1995.

A. Petitioners' 1994 and 1995 Income Tax Returns

The notice of deficiency in this case relates to losses petitioners reported from their investment in the cattle breeding operations of W.J. Hoyt Sons Ranches MLP, an entity operated by Walter J. Hoyt III (Mr. Hoyt) (collectively referred to as the Hoyt cattle operation).

In October 1995, petitioners purportedly purchased cattle from the Hoyt cattle operation in exchange for a promissory note. While the sales documents and other substantive details of the transaction are not part of the record in this case, correspondence between petitioners and members of the Hoyt cattle operation indicate that the investment was intended to generate significant operating losses that petitioners would use to reduce or eliminate their income tax liability. Petitioners were required to remit 75 percent of the tax refunds resulting from the transaction to the Hoyt cattle operation, allegedly in repayment of interest on the promissory note. As part of their

investment, petitioners' income tax returns were prepared by Laguna Tax Service, an entity operated by Mr. Hoyt.[1]

Although they were not associated with the Hoyt cattle operation until October 1995, petitioners reported losses from their cattle investment on their 1994 income tax return, filed on October 20, 1995. Petitioners attached to their 1994 income tax return a Schedule F, Profit or Loss From Farming, and reported a net loss of $184,000 from the "breeding value of registured [sic] cattle". The $184,000 net loss reflected gross income of $191,636 less total expenses of $375,636. Expenses included $165,625 in depreciation and section 179 expenses, $5,541 in interest paid, $153,308 in "1994 Sharecrop Board expenses", and $51,162 in "Expense for the Cost Basis of Purchased Cattle that Died in 1994". The $184,000 loss offset the $103,417 in adjusted gross income petitioners earned in 1994 and resulted in petitioners' claiming a refund of tax withheld from their earnings from employment in 1994 in the amount of $6,856. The unused 1994 net operating losses were carried back to taxable years 1991, 1992, and 1993.[2]

---

[1] Mr. Hoyt was an enrolled agent registered to practice before the Internal Revenue Service. After their 1994 return was selected for examination, petitioners gave a power of attorney to Mr. Hoyt to represent them before the Internal Revenue Service.

[2] Petitioners' taxes for 1991, 1992, and 1993 are not at issue in this case.

Petitioners attached to their 1995 income tax return, as filed on October 18, 1996, a Schedule F and reported a net loss of $46,395 from the Hoyt cattle operation. The loss reflected gross income of $87,486 less total expenses of $133,881. Expenses included $46,395 in depreciation and section 179 expenses and $87,486 in "1994 Sharecrop Bd Expenses". In addition, petitioners reported a net $3 loss from the sale of breeding cattle on a Form 4797, Sales of Business Property, reflecting a gross sale price for the cattle of $178,500 less a cost basis of $317,733 (less $139,230 in depreciation). Petitioners used the $46,395 in losses to offset in part the $88,161 in adjusted gross income they reported in 1995, and therefore they claimed a refund of $6,508 that was withheld from their earnings from employment during the year.

Petitioners' 1994 and 1995 income tax returns were filed after they received extensions of the filing due dates. For 1994, petitioners filed a Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, and received an automatic 4-month extension from the April 15 filing date. On August 17, 1995, petitioners submitted a Form 2688, Application for Additional Extension of Time to File U.S. Individual Income Tax Return, and received an extended filing date of October 16, 1995. Petitioners filed their 1994 return on October 20, 1995.

For 1995, petitioners also filed for the automatic 4-month extension on Form 4868 and submitted a Form 2688 and received an extended filing date of October 15, 1996. Petitioners' 1995 return was filed on October 18, 1996.

B. Respondent's Request for Admissions

On February 24, 2003, respondent served on petitioners' counsel, Steven Morford (Mr. Morford), a copy of respondent's request for admissions (request). The request was filed with the Court on February 25, 2003. Neither petitioners nor their counsel responded to the request, and pursuant to Rule 90(c), each matter set forth in the request was automatically deemed admitted 30 days after the date of service. See also Morrison v. Commissioner, 81 T.C. 644, 647 (1983); Freedson v. Commissioner, 65 T.C. 333, 334-36 (1975), affd. on other grounds 565 F.2d 954 (5th Cir. 1978).

As a result, the following items are deemed admitted as material facts:[3]

(1) Petitioners did not receive $191,636 in Schedule F income for tax year 1994;

(2) petitioners did not receive $87,486 in Schedule F income for tax year 1995;

(3) petitioners did not incur $165,625 in Schedule F depreciation expenses for tax year 1994;

(4) petitioners did not incur $46,395 in Schedule F depreciation expenses for tax year 1995;

(5) petitioners did not incur $5,541 in Schedule F interest expenses in 1994;

(6) petitioners did not incur $153,308 in Schedule F Sharecrop Board expenses for tax year 1994;

(7) petitioners did not incur $87,486 in Schedule F Sharecrop Board expenses for tax year 1995;

(8) petitioners did not incur $51,162 in Schedule F

---

[3] Petitioners' counsel, Mr. Morford, made an oral motion to modify the deemed admissions under Rule 90(f). The Court denied the motion upon a showing by respondent that the request for admissions was properly served at Mr. Morford's business address and that the merits of the trial would not be subserved by modification of the deemed admissions. Respondent's oral motion that the admissions resulting from petitioners' failure to respond to the request for admissions, dated Feb. 24, 2003, be made absolute was granted orally and by written order, and those admissions are deemed admitted.

"Expense for the Cost Basis of Purchased Cattle that Died in 1994" for tax year 1994;

(9) petitioners did not incur the $3 "Other Loss" as claimed on Form 4797 for tax year 1995;

(10) petitioners did not make a bona fide and reasonable estimate of their tax liabilities for inclusion with their application for extension of time within which to file their 1994 Form 1040, U.S. Individual Income Tax Return;

(11) petitioners did not make a bona fide and reasonable attempt to secure the information necessary to make an estimate of their tax liabilities for inclusion with their application for extension of time within which to file their 1994 Form 1040;

(12) petitioners did not remit a proper amount of estimated tax with their application for extension of time within which to file their 1994 Form 1040;

(13) petitioners did not make a bona fide and reasonable estimate of their tax liabilities for inclusion with their application for extension of time within which to file their 1995 Form 1040;

(14) petitioners did not make a bona fide and reasonable attempt to secure the information necessary to make an estimate of their tax liabilities for inclusion with their application for extension of time within which to file their 1995 Form 1040;

(15) petitioners did not remit a proper amount of estimated tax with their application for extension of time within which to file their 1995 Form 1040;

(16) petitioners did not sign sales documents or otherwise become associated with the Hoyt cattle operation until October 1995; and

(17) petitioners were not associated with, nor did they participate in, the Hoyt cattle operation in any fashion during the tax year 1994.

Items (1)-(9) and (16)-(17) of the request were also stipulated as facts by the parties. As a consequence of the deemed admissions and the stipulation of facts, petitioners conceded that they are liable for the deficiencies set forth in their notice of determination.

C.  Petitioners' Failure To Appear at Trial and Concession of Their Tax Liability for 1994 and 1995

Petitioners chose not to attend their trial and did not provide any testimony. Petitioners' counsel, Mr. Morford, entered an appearance on their behalf. Mr. Morford explained that petitioners probably had gone to work instead of appearing for trial. Mr. Morford conceded petitioners' liability for tax deficiencies of $15,535 for 1994 and $8,837 for 1995 but disputed petitioners' liability for additions to tax and accuracy-related penalties.

## Discussion

This case is part of a larger group of cases involving cattle and sheep breeding partnerships organized by Mr. Hoyt. For a description of the Hoyt organization and its operation, see e.g., Barnes v. Commissioner, T.C. Memo. 2004-266; River City Ranches #1, Ltd. v. Commissioner, T.C. Memo. 2003-150; Mekulsia v. Commissioner, T.C. Memo. 2003-138, affd. __ F.3d __ (6th Cir. Nov. 18, 2004); River City Ranches #4, J.V. v. Commissioner, T.C. Memo. 1999-209, affd. 23 Fed. Appx. 744 (9th Cir. 2001); Mitchell v. Commissioner, T.C. Memo. 1995-411.

The Commissioner's determinations in a notice of deficiency are generally presumed correct, and the taxpayer must prove those determinations wrong in order to prevail. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).[4] In this case, in which the correctness of respondent's determinations of tax has been conceded, the burden is on petitioners to show that the additions to tax and accuracy-related penalties should not apply.

Petitioners did not appear at trial and did not testify as to facts underlying their investment in the Hoyt cattle operation

---

[4] Sec. 7491, which under some circumstances shifts the burden of proof or production to the Commissioner, is inapplicable in this case. Sec. 7491 applies only to court proceedings arising in connection with examinations commencing after July 22, 1998. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727. Respondent's examination of petitioners' 1994 return began before Aug. 16, 1996, and their 1995 return was examined before Feb. 24, 1997.

and the losses reported on their income tax returns.  Certain facts and circumstances relevant in determining the applicability of the additions to tax and accuracy-related penalties were known solely to petitioners.  Petitioners' failure to introduce evidence solely in their possession or peculiarly within their knowledge creates a negative inference that the evidence, if introduced, would be unfavorable to them.  See Streber v. Commissioner, 138 F.3d 216, 221-222 (5th Cir. 1998), revg. T.C. Memo. 1995-601; Shaw v. Commissioner, 27 T.C. 561, 573 (1956), affd. 252 F.2d 681 (6th Cir. 1958).  While we have given careful consideration to the arguments presented by petitioners' counsel, we cannot overlook the evidentiary gaps created by petitioners' decision not to attend and provide testimony at their trial.

A.   Addition to Tax Under Section 6651(a)(1)

Section 6651(a)(1) imposes an addition to tax for a taxpayer's failure to file a required return on or before the specified filing date, which is determined with consideration of any extension of time for filing.  The amount of the liability is based upon a percentage of the tax required to be shown on the return.  Sec. 6651(a)(1).  The addition to tax is inapplicable, however, if the taxpayer's failure to file the return was due to "reasonable cause and not due to willful neglect".  Id.

Generally, income tax returns made on the basis of the calendar year must be filed on or before the 15th day of April

following the close of the calendar year. Sec. 6072(a). An individual taxpayer may receive an automatic 4-month extension by filing a Form 4868 on or before the due date. Sec. 1.6081-4(a)(2), Income Tax Regs. (applicable to taxable year 1994); sec. 1.6081-4T(a)(2)(i), Temporary Income Tax Regs., 61 Fed. Reg. 261 (Jan. 4, 1996) (applicable to taxable year 1995). If a taxpayer requires an additional extension of time to file, he or she may make such a request by filing a Form 2688. Secs. 1.6081-1(a) and (b)(5), 1.6081-4(a)(5), Income Tax Regs.; sec. 1.6081-4T(a)(5), Temporary Income Tax Regs., supra.

For the automatic 4-month extension to be effective, the application on Form 4868 "must show the full amount properly estimated as tax for the taxable year". Sec. 1.6081-4(a), Income Tax Regs.; sec. 1.6081-4T(a)(4), Temporary Income Tax Regs., supra. In addition, for taxable year 1994, the taxpayer is required to remit the estimated tax when filing the Form 4868. Sec. 1.6081-4(a), Income Tax Regs. To properly estimate his or her tax liability, a taxpayer must make a bona fide and reasonable attempt to locate, gather, and consult information that will enable him or her to make a proper estimate of his or her tax liability. See Crocker v. Commissioner, 92 T.C. 899, 908-910 (1989).

Petitioners are deemed to have admitted, through items (10)-(15) of the request, the following: (1) They did not make bona

fide and reasonable estimates of their tax liabilities for inclusion with their applications for extensions of time to file their 1994 and 1995 income tax returns, (2) they did not make a bona fide and reasonable attempt to secure the information necessary to make estimates of their tax liabilities for inclusion with their applications for extensions of time to file their 1994 and 1995 income tax returns, and (3) they did not remit the proper amounts of estimated tax with their applications for extensions of time to file their 1994 and 1995 income tax returns. The record shows, by petitioners' explicit admissions, that petitioners' Forms 4868 for 1994 and 1995 were invalid, and consequently, we sustain respondent's determinations that their 1994 and 1995 returns were untimely filed.

Petitioners are liable for additions to tax under section 6651(a)(1) unless they can show that their failure to file timely income tax returns was due to reasonable cause and not willful neglect. Petitioners did not appear at trial to testify on the factual question whether their failure to file timely income tax returns was due to reasonable cause and not willful neglect. In reviewing the record, we find nothing to indicate that petitioners exercised ordinary business care and prudence in an effort to file their income tax returns on time. Because petitioners had the burden to prove that their failure to file was due to reasonable cause, and because of the admissions, the

available evidence, and petitioners' refusal to testify, the record in this case clearly shows that petitioners' failure to file their income tax returns on time was not due to reasonable cause.

Respondent's determinations that petitioners are liable for additions to tax for 1994 and 1995 are sustained.

B.  Accuracy-Related Penalties

Section 6662(a) provides that a taxpayer may be liable for a penalty of 20 percent of the portion of an underpayment of tax attributable to (1) a substantial understatement of tax, (2) negligence or disregard of rules or regulations, or (3) any substantial valuation misstatement.  Sec. 6662(a) and (b)(1), (2), and (3).  The accuracy-related penalty does not apply to any portion of an underpayment of tax if it is shown that there was reasonable cause for such portion and that the taxpayer acted in good faith.  Sec. 6664(c)(1).

An "understatement of tax" is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $5,000.  Sec. 6662(d)(1) and (2).

"Negligence" is defined as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs. Generally, a taxpayer is negligent if he or she fails to make a reasonable attempt to ascertain the correctness of a deduction,

credit, or exclusion on a tax return which would seem to a reasonable and prudent person to be "too good to be true". Sec. 1.6662-3(b)(1)(ii), Income Tax Regs. "Disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c).

A "substantial valuation misstatement" occurs if the value of any property or adjusted basis of any property claimed on an income tax return is 200 percent or more of the correct amount. Sec. 6662(e)(1)(A); sec. 1.6662-5(e)(1), Income Tax Regs. If the valuation misstatement is 400 percent or more of the correct amount, the misstatement is considered a "gross valuation [misstatement]", and the 20-percent penalty is increased to 40 percent. Sec. 6662(h).

Only one accuracy-related penalty may be applied with respect to any given portion of an underpayment, even if that portion is subject to more than one of the types of misconduct described in section 6662. Sec. 1.6662-2(c), Income Tax Regs. In the notice of deficiency, respondent determined that petitioners are liable for accuracy-related penalties under section 6662(c) for negligence, section 6662(d) for a substantial understatement of income tax, section 6662(e) for a substantial valuation misstatement, and section 6662(h) for a gross valuation misstatement. Section 1.6662-2(c), Income Tax Regs., prevents respondent from stacking these types of misconduct to impose a penalty greater than the maximum penalty of 20 percent on any

given portion of an underpayment (or 40 percent if such portion is attributable to a gross valuation misstatement).

Petitioners concede that they were not entitled to claim Schedule F losses of $184,000 for taxable year 1994 and $46,395 for taxable year 1995. After adjustment of petitioners' income tax returns to account for the disallowance of the Schedule F losses, petitioners' understatements of income tax for 1994 and 1995 exceeded 10 percent of the tax required to be shown on the return and $5,000. Accordingly, there was a "substantial understatement of income tax" in 1994 and 1995 for purposes of section 6662(d). Because the "anti-stacking rule" of section 1.6662-2(c), Income Tax Regs., limits the accuracy-related penalty under section 6662 to 20 percent, it is not necessary for us to consider whether petitioners were negligent for purposes of section 6662(c).

However, since the 20-percent penalty may be increased to 40 percent if the portion of the underpayment is attributable to a gross valuation misstatement, we must consider the applicability of section 6662(h). On their 1994 return, petitioners claimed "depreciation and section 179 expenses" of $165,625 and "Expense for the Cost Basis of Purchased Cattle that Died in 1994" of $51,162. On their 1995 return, petitioners reported $46,395 in "depreciation and section 179 expenses" and a net $3 loss from the sale of cattle based upon a gross sale price of $178,500 less

a cost basis of $317,733 (adjusted by $139,230 for depreciation). Petitioners stipulated and were deemed to admit that they did not incur these expenses. Respondent determined that petitioners' adjusted basis for the assets giving rise to these expense deductions was zero, resulting in a valuation misstatement of 400 percent or more of the correct amount for purposes of section 6662(h). See sec. 1.6662-5(g), Income Tax Regs. As stated above, petitioners bear the burden of proving that respondent's determinations under section 6662 are incorrect. Petitioners did not appear for their trial and did not introduce any evidence to contest these determinations. Consequently, we sustain the imposition of a 40-percent penalty under section 6662(h) for a gross valuation misstatement with regard to the portion of the underpayment of tax attributable to the items described in this paragraph. See Zirker v. Commissioner, 87 T.C. 970, 979-980 (1986).

Petitioners contend that an accuracy-related penalty should not be imposed because they acted with reasonable cause and in good faith for purposes of the "reasonable cause exception" of section 6664(c)(1). The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs. Generally, the most important factor is the extent of the taxpayer's effort

to assess his or her proper tax liability.  Id.  Under some circumstances, reasonable cause may be established when a taxpayer shows that he or she reasonably relied on the advice of an independent and competent tax professional.  United States v. Boyle, 469 U.S. 241, 250-251 (1985); Weis v. Commissioner, 94 T.C. 473, 487 (1990); Peete v. Commissioner, T.C. Memo. 2004-31; sec. 1.6664-4(b)(1), Income Tax Regs.

We do not believe that petitioners have satisfied their burden of proof in regard to the reasonable cause exception.  As stated earlier, while we have given careful consideration to the arguments set forth by petitioners' counsel, Mr. Morford, we cannot overlook petitioners' failure to appear at trial and provide testimony on the facts underlying their participation in the Hoyt cattle operation and the reasonableness behind the underpayments of tax on their income tax returns for 1994 and 1995.

The limited facts that are part of the record do not support a finding that petitioners acted with reasonable cause and in good faith.  Petitioners were college-educated professionals who must have realized that the overall benefits they received from their investment in the Hoyt cattle operation were simply "too good to be true".  Although they were not associated with the Hoyt cattle operation until October 1995, petitioners claimed $184,000 in cattle losses on their 1994 income tax return.

Reporting losses from a transaction entered into in taxable year 1995 on their 1994 income tax return simply does not demonstrate that petitioners exercised ordinary care and prudence in determining their tax obligation.

Petitioners argue that they relied in good faith upon the tax advice and tax preparation services they received from Mr. Hoyt and Laguna Tax Service, an entity operated by Mr. Hoyt. Although Mr. Hoyt was an enrolled agent authorized to practice before the IRS, any tax advice from either Mr. Hoyt or Laguna Tax Service cannot be characterized as advice from an independent and competent tax professional. Rather, such advice is better classified as sales promotion. See Vojticek v. Commissioner, T.C. Memo. 1995-444. Since petitioners were required to remit to the Hoyt cattle operation 75 percent of their tax refunds, representations made by Mr. Hoyt or Laguna Tax Service would clearly be self-serving and unreliable. Petitioners did not consult any competent tax professional from outside the Hoyt cattle operation.

For the foregoing reasons, we sustain respondent's determinations that petitioners are liable for accuracy-related penalties for 1994 and 1995.

To reflect the amounts of the additions to tax and penalties as discussed above,

<u>Decision will be entered</u>

<u>under Rule 155.</u>
