T.C. Memo. 2005-64

UNITED STATES TAX COURT

D. JEAN BARTELMA AND DAN F. BARTELMA, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

CYNTHIA C. BARTELMA AND JAMES RICHARD BARTELMA, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 19477-02, 19478-02.    Filed March 30, 2005.

D. Jean Bartelma and Dan F. Bartelma, pro sese.

Cynthia C. Bartelma and James Richard Bartelma, pro sese.

Douglas S. Polsky, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge:  The petitions in these consolidated cases
were filed in response to notices of Partial Allowance--Final
Determination granting in part and denying in part petitioners'

claims to abate interest on income tax liabilities for 1995 pursuant to section 6404(e). The issue for decision is whether the failure to abate the additional interest was an abuse of discretion.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioners resided in Runnells, Iowa, at the time that they filed their petitions in these cases.

Dan F. Bartelma (Dan) and James Richard Bartelma (James) were equal general partners in Bartelma Farm Partnership (the partnership). They were also shareholders, along with other family members, in Bartelma Farms, Inc. The partnership timely filed its Form 1065, U.S. Partnership Return of Income, for 1995. Petitioners timely filed their individual income tax returns for 1995.

On May 9, 1997, petitioners were notified that the partnership's Form 1065 for 1995 was assigned for examination. Petitioners met with an agent of the Internal Revenue Service (IRS), Matthew M. McKenney (McKenney), on May 27, 1997, and received the examination results in a letter dated July 14, 1997. The examination resulted in adjustments to the partnership's

liabilities that flowed through to petitioners' individual returns.

In January 1998, the IRS sent to petitioners 30-day letters regarding the adjustments made with respect to the partnership's liabilities. Petitioners, through their representative, Marvin D. Berger (Berger), filed protests to the IRS determination on or about February 3, 1998, and requested that the examination findings be appealed to the IRS Appeals Office (Appeals). Their cases were assigned to an Appeals officer, Eugene H. DeBoer (DeBoer), in August 1998. DeBoer sent letters dated August 13, 1998, to Berger informing him that petitioners' cases had been referred to him for consideration. After a conference with petitioners and after exchanging correspondence for a number of months, DeBoer sent a letter dated December 21, 1999, to Berger requesting that petitioners sign a proposed agreement. This letter stated that "By law, interest accrues from the due date of the return. <u>In order to stop additional interest from accruing, you may enclose full payment payable to the United States Treasury.</u>" Petitioners had also been advised during the examination and audit process that they could make an advance payment of tax to stop the running of interest.

On February 1, 2000, the IRS sent statutory notices of deficiency (notices) to petitioners. The notice sent to Dan and D. Jean Bartelma (Jean) determined a deficiency of $23,808. The

notice sent to James and Cynthia C. Bartelma (Cynthia) determined a deficiency of $27,457.  These notices stated that, if petitioners did not agree with the deficiency but wished to stop the running of interest, they should make a cash bond and mail it to the Appeals officer.  Dan and Jean filed their petition with the Court on March 13, 2000, and James and Cynthia filed their petition with the Court on March 3, 2000.  They did not make a cash bond to stop the running of interest.  Those cases were consolidated and settled, and decisions were entered on October 26, 2000.  The decisions resulted in deficiencies of $10,760 against Dan and Jean and $14,396 against James and Cynthia.  Additionally, the decisions stated that "interest will be assessed as provided by law on the deficiency due from the petitioners."

On March 8, 2001, interest was assessed against petitioners. On April 24, 2001, McKenney, who had been reassigned to petitioners' cases, sent to petitioners letters estimating the amount of tax petitioners would owe for 1995.  Additionally, petitioners were made aware of the interest that was accruing on their deficiencies.  In a letter dated April 26, 2001, Berger requested that the IRS grant petitioners a 63-percent abatement of interest on the deficiencies due to unreasonable IRS delays. There was no Form 843, Claim for Refund and Request for Abatement, attached to this letter.  In letters dated May 3 and

May 4, 2001, McKenney stated that the requested interest abatement was unreasonable. However, he did include the forms and procedures necessary for petitioners to file a claim properly. Additionally, McKenney recommended that petitioners "pay at least the tax due and the amount of interest that you reasonably believe you owe" in order to avoid additional interest charges.

Petitioners filed Forms 843 on or about May 9, 2001, requesting a 75-percent abatement of interest. On May 17, 2001, petitioners' voluntary payments of the tax deficiencies were posted to their accounts. These payments included the tax estimated as owed plus what petitioners asserted to be a reasonable amount of interest, that being 25 percent of the interest quoted in the April 24, 2001, letters from McKenney. Petitioners had the ability to pay the entire amount due at the time that they made their voluntary payments. However, they believed that the amount of interest was unreasonable.

As of May 17, 2001, McKenney was also working on petitioners' 1993, 1994, and 1996 taxable years. Between May 17, 2001, and October 31, 2001, McKenney was unable to obtain Audit Information Management System (AIMS) controls, which allow agents to control their cases, for petitioners' accounts. McKenney determined that the process of obtaining AIMS controls should have taken only 90 days. Therefore, on December 19, 2001, the

IRS partially allowed petitioners' claims for interest abatement for the period starting August 17, 2001, and ending October 31, 2001. The IRS determined that $32.13 of interest should be abated with respect to Dan and Jean and that $136.52 of interest should be abated with respect to James and Cynthia. These amounts were posted to petitioners' accounts on February 18, 2002. The notices of partial allowance dated December 19, 2001, stated that "Interest will continue to be charged on any unpaid liability."

Petitioners objected to the IRS determination and, in letters dated January 15, 2002, requested that their cases be sent to Appeals. Their cases were assigned to Diane Paulson (Paulson) on February 26, 2002. Paulson contacted petitioners by letters dated May 30, 2002, to inform them that she was assigned to their cases and that, due to her caseload, she would be in touch with them within the next 6 months. On July 31, 2002, the cases were transferred to another Appeals officer, Al W. Haring (Haring). After a telephone conversation with James, Haring transferred petitioners' cases to Appeals officer Arthur C. Welp (Welp) in Des Moines, Iowa, on August 8, 2002.

By letters dated August 16, 2002, Welp told petitioners that he would contact them to schedule a conference. In September 2002, Welp informed petitioners that an "interest specialist" had discovered errors in the amounts shown as due in the letters

dated April 24, 2001.  These errors had subsequently been corrected on Dan and Jean's December 10, 2001, tax bill and on James and Cynthia's January 7, 2002, tax bill.  Welp determined that petitioners should be granted an interest abatement for the period between April 24, 2001, and January 7, 2002.  Therefore, Dan and Jean received 28 extra days of interest abatement because they received their tax bill on December 10, 2001, but were allowed interest abatement through January 7, 2002.  The interest abatement was reduced by the amount of abatement previously allowed for the period between August 17 and October 31, 2001.  As a result, Dan and Jean received an abatement of $23.42, and James and Cynthia received an abatement of $75.44.  These amounts were reflected in the notices of Partial Allowance--Final Determination sent to petitioners on October 22, 2002.  Petitioners paid the disputed balances on December 10, 2002, and filed petitions with the Court on December 16, 2002.  The amounts in dispute are $1,204.08 for Dan and Jean and $5,124.07 for James and Cynthia.

OPINION

Under section 6404(e)(1), the Commissioner may abate the assessment of interest on any deficiency if the interest is attributable to an error or delay by an officer or employee of the IRS (acting in his official capacity) in performing a ministerial act.  (Amendments to section 6404(e) in 1996 do not

apply to this case because they apply only to interest accruing with respect to deficiencies or payments for tax years beginning after July 30, 1996.  Taxpayer Bill of Rights 2, Pub. L. 104-168, sec. 301, 110 Stat. 1457 (1996).)  A "ministerial act" is a procedural or mechanical act that does not involve the exercise of judgment or discretion and that occurs during the processing of a taxpayer's case after all prerequisites to the act have taken place.  Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).  The "mere passage of time" during a tax dispute does not establish error or delay in performing a ministerial act.  Lee v. Commissioner, 113 T.C. 145, 150 (1999).  The Court may order abatement where the Commissioner abuses his discretion by failing to abate interest.  Sec. 6404(h)(1).  In order to prevail, a taxpayer must prove that the Commissioner exercised this discretion arbitrarily, capriciously, or without sound basis in fact or law.  Lee v. Commissioner, supra at 149; Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Petitioners argue that there were a number of delays and errors throughout the protest and appeals process.  At trial of these cases, however, petitioners failed to identify any specific instances that would qualify, under the statute, as an error or delay by an officer or employee of the IRS in performing a ministerial act during the processing of their various protests, appeals, and Tax Court cases.  Only broad allegations regarding a

lack of timeliness and accuracy were put forth.  Petitioners made reference to lengthy periods during which they would hear nothing from the IRS.  However, with the exception of McKenney's inability to get AIMS controls in 2001 (for which an interest abatement had previously been allowed), a review of the work history and correspondence shows that IRS personnel were engaged in a managerial, decision-making process during these times and that there was no ministerial delay.  Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., supra.  Acts that are either managerial or arise out of general administrative decisions are not ministerial.  See Mekulsia v. Commissioner, T.C. Memo. 2003-138, affd. 389 F.3d 601 (6th Cir. 2004).  Deciding how and when to work on cases, based on an evaluation of the entire caseload and workload priorities, is not a ministerial act.  See id.

Petitioners also cite errors and miscalculations made in the amounts of liabilities owed for 1995, which were set forth in the April 24, 2001, letter from McKenney and later corrected by Welp. Again, petitioners were granted an abatement of interest for this period.  There were no other specific instances of a ministerial error by respondent.

In addition to denying any ministerial errors or delays, respondent argues that petitioners were made aware of the increasing interest on their liabilities in numerous letters and had the ability to pay their liabilities to stop the interest

from accruing.  Petitioners could have paid as early as the date of the original notices of deficiency in February 2000, or they could have paid upon settlement of the original Tax Court cases in October 2000.  When petitioners made voluntary payments in May 2001, they could have paid the entire amounts due and requested refunds in their abatement claims.  Finally, petitioners could have paid when they received their final tax bills in December 2001 and January 2002, respectively.  However, petitioners did not pay the entire amounts due until December 10, 2002. Petitioners' delayed payments of their liabilities are not attributable to error or delay by any officer or employee of the IRS in performing a ministerial act.  Sec. 6404(e)(1)(B).

Because petitioners presented neither authority nor evidence to support their claim that there were ministerial errors and delays above and beyond those that had already been identified and remedied, there was no abuse of discretion in denying an additional abatement of interest in these cases.

To reflect the foregoing,

Decisions will be entered for respondent.