T.C. Memo. 2005-147

UNITED STATES TAX COURT

DORENE BULGER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 3829-03.                    Filed June 20, 2005.

<u>Terri A. Merriam</u>, <u>Wendy S. Pearson</u>, and <u>Jennifer A. Gellner</u>,
for petitioner.

<u>Robert V. Boeshaar</u> and <u>Julie L. Payne</u>, for respondent.

MEMORANDUM OPINION

MARVEL, <u>Judge</u>:  This case is before the Court on
petitioner's motion for litigation and administrative costs
(motion) filed pursuant to section 7430 and Rule 231.[1]

_____
[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect at the time petitioner filed
(continued...)

Petitioner resided in Aurora, Colorado, when her petition in this case was filed.

On April 29, 2004, we received the parties' signed decision document, which we filed as the parties' stipulation of settlement. On May 7, 2004, we filed petitioner's motion. On August 6, 2004, we filed respondent's response to petitioner's motion. On September 15, 2004, we filed petitioner's reply to respondent's response and an additional declaration in support of the reply. On December 6, 2004, we ordered petitioner to submit an additional declaration and supporting documentation to support the reasonableness of the costs claimed. On January 10, 2005, we received and filed petitioner's supplemental declaration, and on January 27, 2005, we received and filed respondent's supplemental response to petitioner's supplemental declaration.

Neither party requested a hearing, and, after reviewing the relevant documents, we conclude that a hearing on this matter is not necessary. See Rule 232(a)(2). In disposing of this motion, we rely on the parties' filings and attached exhibits.

## Background

In 1984, petitioner and her husband, Bruce Bulger (Mr. Bulger), invested in a partnership called Shorthorn Genetic Engineering 1985-2, Ltd. (SGE), which had been organized,

---

[1](...continued)
the petition, and all Rule references are to the Tax Court Rules of Practice and Procedure.

promoted, and operated by Walter J. Hoyt III.[2] Petitioner and Mr. Bulger held partnership interests either jointly or as joint tenants with rights of survivorship in three separate "series" of SGE partnership units. Petitioner wrote and signed numerous checks payable to SGE or the Hoyt organization from her and Mr. Bulger's joint bank account to maintain their investment in SGE. SGE issued Schedules K-1, Partner's Share of Income, Credits, Deductions, etc., for 1985 and 1986 to petitioner and Mr. Bulger, which reflected that both petitioner and Mr. Bulger were partners in SGE. In addition, in 1992, petitioner and Mr. Bulger signed a Power of Attorney and Debt Assumption Agreement in which they

---

[2]Walter J. Hoyt III also organized, promoted, operated, and served as the general partner of more than 100 livestock breeding limited partnerships from 1971 through 1998. See, e.g., River City Ranches #1, Ltd. v. Commissioner, T.C. Memo. 2003-150, affd. in part, revd. in part and remanded 401 F.3d 1136 (9th Cir. 2005). In general, the Hoyt partnerships purchased livestock from related Hoyt entities for no money down and a promissory note. See, e.g., Durham Farms #1, J.V. v. Commissioner, T.C. Memo. 2000-159, affd. 59 Fed. Appx. 952 (9th Cir. 2003); Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, T.C. Memo. 1996-515. The investors in the Hoyt partnerships assumed personal liability for the partnerships' promissory notes, made payments on the notes to the Hoyt partnerships, see, e.g., Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, supra, and, in return, deducted large partnership losses related to the purchase, management, and sale of livestock, see River City Ranches #1, Ltd. v. Commissioner, supra; Mekulsia v. Commissioner, T.C. Memo. 2003-138, affd. 389 F.3d 601 (6th Cir. 2004); Durham Farms #1, J.V. v. Commissioner, supra; Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, supra; Bales v. Commissioner, T.C. Memo. 1989-568.

appointed Mr. Hoyt to act on their behalf with regard to partnership matters and reaffirmed their prior debt assumption agreement with the Hoyt partnership.

Petitioner and Mr. Bulger filed joint Federal income tax returns for 1985 through 1987, on which they claimed substantial losses and investment credits related to their SGE investment, and a Form 1045, Application for Tentative Refund, on which they carried back an investment credit attributable to SGE to 1982, 1983, and 1984. The SGE deductions and credits the Bulgers claimed significantly reduced their taxable income and overall Federal income tax liabilities for 1982 through 1987. Following an audit and related litigation,[3] respondent adjusted the Hoyt partnership losses and investment credits claimed on Mr. Bulger's 1982 and 1983 individual Federal income tax returns and petitioner and Mr. Bulger's returns for 1984 through 1987 and assessed substantial income tax deficiencies for 1984 through 1987.

On or about July 10, 2000, petitioner submitted Form 8857, Request for Innocent Spouse Relief (And Separation of Liability and Equitable Relief), on which she requested relief from joint

---

[3]According to respondent, litigation regarding petitioner's and Mr. Bulger's investment in SGE was resolved by this Court's order and decision, entered on Nov. 27, 1996, in Shorthorn Genetic Engg. 1985-1, Ltd. v. Commissioner, docket No. 22069-89.

and several liability for 1982 to 1997.[4]  Petitioner attached a supporting statement to the request in which she represented that she was not involved in the SGE investment and did not financially benefit from it.  Petitioner argued that she met each requirement of section 6015(b) and, in particular, that she did not understand the partnership transactions and had no knowledge or reason to know of the understatements attributable to the Hoyt partnership items on the joint returns.

On August 21, 2001, respondent sent petitioner a preliminary determination letter denying petitioner's request for relief under section 6015 for taxable years 1982 through 1987.[5] Respondent advised petitioner of her right to administratively appeal the decision.

On or about September 17, 2001, petitioner administratively appealed respondent's denial of relief from joint and several liability under section 6015(b) and (f).  Petitioner filed Form 12509, Statement of Disagreement, in which she summarized the facts and law in support of her request for relief.  Petitioner maintained that she had no knowledge or reason to know of the

---

[4]There are no income tax assessments against petitioner for 1982 and 1983, and no understatements of tax have been assessed for 1988 through 1997.

[5]The preliminary determination letter references "enclosed Form 886-A" as providing an explanation of why respondent denied relief.  Form 886-A, Explanation of Items, was not included in the exhibits or attachments by either party.

true nature of the investment or that the claimed deductions were erroneous. Petitioner further stated, in relevant part, as follows:

> The recent conviction of Jay Hoyt establishes that Dorene had no actual knowledge, and thus no reason to know, that the claimed deductions were erroneous. The Hoyt investors were adjudged to be victims of a fraud, which by definition means they were deceived as to the nature of their investment and the facts giving rise to the disallowance of their investment related tax deductions. * * *

The cover letter attached to petitioner's administrative appeal stated that "We will provide additional factual information once we are contacted by the Appeals Officer." Petitioner's case was assigned to Appeals Officer Leslie Hackmeister.

On or around April 10, 2002, petitioner's counsel sent Appeals Officer Hackmeister a letter intended to supplement the factual and legal arguments of petitioner's appeal. In the letter, petitioner's counsel reiterated that Mrs. Bulger was not involved with the partnership investment, did not understand the partnership transactions, and that

> She certainly had no substantive knowledge of the underlying circumstances that caused the deductions to be denied, i.e., that the Hoyt organization did not have the 30,000 cattle it claimed it had and the misappropriation of capital contributions and IRA funds.

Petitioner's counsel concluded the letter by again offering additional information and documentation upon request and stating that everything "in this discussion can be backed up with

documentation.  However, the documentation is extensive and we do not want to overwhelm you."

On June 17, 2002, Mr. Bulger died.  Neither petitioner nor petitioner's counsel informed Appeals Officer Hackmeister of Mr. Bulger's death.

On December 5, 2002, respondent issued a Notice of Determination Concerning Your Request for Relief From Joint and Several Liability Under Section 6015 (notice of determination) denying petitioner's request for relief.  Respondent denied relief because:  (1) Contrary to section 6015(b) requirements, the erroneous item was attributable to both petitioner and Mr. Bulger, and petitioner had knowledge of the item that caused the understatement; (2) petitioner did not meet the marital status requirements of section 6015(c); and (3) it would not be inequitable to hold petitioner responsible for the understatement under section 6015(f).  Appeals Officer Hackmeister's narrative explaining the reasons for denying petitioner relief also stated as follows with respect to section 6015(c):

Requirements:

2.    There is a deficiency of tax allocable to the non-requesting spouse.
         **NOT MET**

3.    The spouse seeking relief did not have actual knowledge of the deficiency at the time the return was signed.
         **NOT MET**

4. He or she is either divorced, widowed, legally separated, or for the 12 months preceding the election, was living apart from the non-electing spouse;
**NOT MET**

On March 10, 2003, we filed petitioner's timely petition seeking review of respondent's determination pursuant to section 6015(e). The petition, which stated that Mr. Bulger had died, was the first notification to respondent of Mr. Bulger's death.[6] In the petition, petitioner alleged, in pertinent part, that respondent erred in concluding petitioner did not qualify for relief under section 6015(c) and that "Respondent made no effort to prove, and failed to prove, that Petitioner had actual knowledge of the factual circumstances which made the tax items unallowable as a deduction." As she had in her initial request for relief and her administrative appeal, petitioner included an extensive recitation of the facts on which she relied to support her allegations, including the following:

o. Neither Petitioner nor Mr. Bulger had actual knowledge of the underlying problems with the transactions, nor could they have discovered that Jay Hoyt failed to transfer title of the livestock to the partnership and that he was otherwise converting partnership assets.

* * * * * * *

---

[6]On Apr. 14, 2003, after speaking with respondent, petitioner also provided respondent with a copy of Mr. Bulger's death certificate.

p.   Due to the complexity of Jay Hoyt's fraud, it was impossible for either Petitioner or Mr. Bulger to discover the true nature of the transactions.

q.   Mr. Bulger and all other Hoyt investors were deceived by Jay Hoyt as to the nature of their investment and were ultimately determined by a court of law to be victims of his elaborate fraud.

\*    \*    \*    \*    \*    \*    \*

nn.  Petitioner had no actual knowledge of the factual circumstances that made the tax items unallowable as a deduction.

On May 1, 2003, we filed respondent's answer, in which he denied each of petitioner's allegations of error.  Respondent also denied petitioner's representation that Mr. Bulger had died and the representations in subparagraphs o., q., and nn. on the basis of lack of knowledge or information.  Respondent denied the representation in subparagraph p. without qualification.

On February 23, 2004, this case was called for hearing during the Court's Seattle, Washington, trial session.  The parties reported that they believed they had reached a basis for settlement, and the case was scheduled for recall on March 2, 2004.  At the recall, petitioner stated that she wanted to verify computational adjustments made by respondent and that the issue of penalties had not been settled.  On March 3, 2004, the parties reported they were in agreement on the substantive issues in the case but still disputed the computational adjustments.  We

ordered the parties to file simultaneous briefs on the computations.  On April 29, 2004, however, we received the parties' signed stipulation of settlement instead.

The stipulation of settlement reflected that the parties had agreed to a section 6015(c) allocation with respect to petitioner's and Mr. Bulger's Federal income tax liabilities as follows:

| Year | Joint tax liability before allocation | Petitioner's share under sec. 6015(c) |
|------|---------------------------------------|----------------------------------------|
| 1982 | $7,896 | -0- |
| 1983 | 4,540 | -0- |
| 1984 | 10,542 | -0- |
| 1985 | 8,244 | -0- |
| 1986 | 10,894 | -0- |
| 1987 | 464 | -0- |
| Total | 42,580 | -0- |

The allocation of liability under section 6015(c) was made by treating petitioner's and Mr. Bulger's SGE investment as a joint investment, allocating 50 percent of the partnership items to petitioner and 50 percent to Mr. Bulger in accordance with section 6015(d)(1) and (3)(A), and adjusting the allocation, as required by section 6015(d)(3)(B), to account for the tax benefit that petitioner's share of the partnership items provided to Mr. Bulger on the joint returns.  The parties further agreed that petitioner was not entitled to relief from joint and several liability under section 6015(b) or (f).

On May 7, 2004, we received and filed petitioner's motion for litigation and administrative costs.  In her motion,

petitioner asserts that she meets all of the requirements under section 7430 to recover litigation costs of $12,029.05.[7]  The litigation costs petitioner claims were computed using an hourly rate of $195 for two of petitioner's attorneys and included a claim of $6,354.05 for petitioner's alleged share of attorney's fees (the group fees) that her attorneys had charged to two groups of similarly situated Hoyt investor clients with pending section 6015 claims.  In support of the motion, petitioner's counsel attached billing records for petitioner's account dated March 15, 2003, through April 30, 2004, that described in detail the attorney's fees and costs petitioner incurred individually and contained generic entries[8] denoting monthly charges to petitioner's account for her alleged share of the group fees.  Although petitioner alleged that the group fees were reasonable and reasonably allocated to her, she did not include any supporting information or documentation with respect to the group

---

[7]Petitioner concedes that respondent's administrative position was substantially justified and that she is not entitled to administrative costs because respondent did not receive notice of Mr. Bulger's death until Mar. 13, 2003, the date the petition was served on respondent.  Consequently, petitioner seeks only those litigation costs incurred on or after Mar. 15, 2003.

[8]Although petitioner agrees that the fee summary for her account attached to the motion describes her share of the "Group Innocent Spouse fees" as "flat" fees, petitioner contends that the flat fee reference is simply the way in which the Pearson-Merriam (petitioner's attorneys' law firm) billing program described sum certain fees.  Petitioner's representation is supported by a declaration of petitioner's counsel.

fees that showed the nature of the work performed, the attorneys' hourly rates, the identity of the person who performed the work, the number of hours billed for the work, the number of Hoyt investor clients who shared in the group fees, or the manner in which the group fees were allocated among petitioner and the other Hoyt investor clients of petitioner's attorneys.

On August 6, 2004, we filed respondent's response to petitioner's motion, in which respondent objected to an award of costs.  Petitioner requested and was granted leave to file a reply to respondent's response to the motion.  On September 15, 2004, we filed petitioner's reply to respondent's response, which included a supplemental declaration but did not provide any detailed information regarding her counsel's billing and allocation arrangements with respect to the group fees.  On December 6, 2004, we ordered petitioner to submit, on or before January 7, 2005, an additional declaration with supporting documentation to support her contention that the group fees were reasonable and had been reasonably allocated and that her share of the group fees was incurred in connection with this matter. In the December 6, 2004, order, we also authorized respondent to submit a supplemental response addressing the information contained in petitioner's supplemental declaration on or before January 31, 2005.

On January 10, 2005, we received and filed petitioner's supplemental declaration, which contained billing records for fees and costs petitioner's attorneys had charged to common accounts for two separate groups of Hoyt investor clients. The billing records provided specific information about the nature of the work performed for the benefit of both groups of Hoyt investor clients and included charges to common accounts that were computed using an hourly rate of $195 for two of petitioner's attorneys. On January 27, 2005, we received and filed respondent's supplemental response to petitioner's supplemental declaration.

## Discussion

Section 7430(a) authorizes the award of reasonable litigation costs to the prevailing party in court proceedings brought by or against the United States in connection with the determination of income tax. In addition to being the prevailing party, in order to receive an award of reasonable litigation costs, a taxpayer must exhaust administrative remedies and not unreasonably protract the court proceedings. Sec. 7430(b)(1), (3). Unless the taxpayer satisfies all of the section 7430 requirements, we do not award costs. Minahan v. Commissioner, 88 T.C. 492, 497 (1987).

Section 7430(c)(4)(A) and (B)(i) provides that a taxpayer is a prevailing party if (1) the taxpayer substantially prevailed

- 14 -

with respect to the amount in controversy or the most significant issue or set of issues, (2) the taxpayer meets the net worth requirements of 28 U.S.C. section 2412(d)(2)(B), and (3) the Commissioner's position in the court proceeding was not substantially justified. See also sec. 301.7430-5(a), Proced. & Admin. Regs. Although the taxpayer has the burden of proving that she meets requirements (1) and (2), the Commissioner must show that his position was substantially justified. Sec. 7430(c)(4)(B); Rule 232(e).

Respondent concedes that petitioner exhausted the available administrative remedies, meets the net worth requirements of 28 U.S.C. section 2412(d)(2)(B), and did not unreasonably protract the administrative or judicial proceedings. In addition, respondent does not dispute that petitioner substantially prevailed with respect to the amount in controversy. Respondent argues, however, that petitioner is not the prevailing party because respondent's litigating position was substantially justified and that the costs petitioner claims are unreasonable.

A.   Whether Respondent's Litigating Position Was Substantially
     Justified

For purposes of deciding a motion for reasonable litigation costs, a court proceeding is any civil action brought in a court of the United States, including this Court, sec. 7430(c)(6), and the "position of the United States" in a court proceeding is the position taken by the Internal Revenue Service (the Service) in a

judicial proceeding to which section 7430(a) applies, sec.
7430(c)(7)(A).  Respondent's litigating position is that taken in
his answer, which was filed on May 1, 2003.  See Huffman v.
Commissioner, 978 F.2d 1139, 1148 (9th Cir. 1992), affg. in part,
revg. in part and remanding T.C. Memo. 1991-144; Maggie Mgmt. Co.
v. Commissioner, 108 T.C. 430, 442 (1997).  Respondent's position
in the answer was that the investment in SGE was a joint
investment, and petitioner was not entitled to relief under
section 6015(c) because she did not meet the marital status
requirement and had actual knowledge, when she signed the
returns, of any items giving rise to the deficiency that were
allocable to her spouse.

The Commissioner's position is substantially justified if it
has a reasonable basis in both fact and law and is justified to a
degree that could satisfy a reasonable person.  Huffman v.
Commissioner, supra at 1147 n.8 (citing Pierce v. Underwood, 487
U.S. 552, 565 (1988)); Maggie Mgmt. Co. v. Commissioner, supra at
443; sec. 301.7430-5(c)(1), Proced. & Admin. Regs.  The
reasonableness of the Commissioner's position turns on the
available facts that formed the basis for the position and any
legal precedents related to the case.  Maggie Mgmt. Co. v.
Commissioner, supra at 443; DeVenney v. Commissioner, 85 T.C.
927, 930-931 (1985).  A significant factor in determining whether
the Commissioner's position is substantially justified as of a

given date is whether, on or before that date, the taxpayer has provided all relevant information under her control and relevant legal arguments supporting her position to the appropriate Service personnel.[9]  Maggie Mgmt. Co. v. Commissioner, supra at 443; sec. 301.7430-5(c)(1), Proced. & Admin. Regs.

The only issue petitioner raises in her motion is whether respondent's position with respect to section 6015(c) was substantially justified.  In deciding whether to award litigation costs, therefore, we focus our analysis on the reasonableness of respondent's position with respect to section 6015(c).

1.  Section 6015(c)

Under section 6015(c), if the requesting spouse is no longer married to,[10] or is legally separated from, the spouse with whom she filed the joint return, the requesting spouse may elect to limit her liability for a deficiency as provided in section 6015(d).  Sec. 6015(c)(1), (3)(A)(i)(I).  The election under section 6015(c) must be made no later than 2 years after the

---

[9]"[A]ppropriate Internal Revenue Service personnel" are those employees who are responsible for reviewing the taxpayer's information or arguments, or employees who, in the normal course of procedure and administration, would transfer the information or arguments to the reviewing employees.  Sec. 301.7430-5(c)(1), Proced. & Admin. Regs.

[10]A requesting spouse is no longer married if she is widowed.  Rosenthal v. Commissioner, T.C. Memo. 2004-89.

Secretary[11] has begun collection activities with respect to the electing spouse.  Sec. 6015(c)(3)(B).

In general, section 6015(d) provides that any item giving rise to a deficiency on a joint return shall be allocated to the spouses as though they had filed separate returns, and the requesting spouse shall be liable only for her proportionate share of the deficiency that results from such allocation.  Sec. 6015(d)(1), (3)(A).  To the extent that the item giving rise to the deficiency provided a tax benefit on the joint return to the other spouse, the item shall be allocated to the other spouse in computing his or her proportionate share of the deficiency.[12] Sec. 6015(d)(3)(B); Hopkins v. Commissioner, 121 T.C. 73, 83-86 (2003).

An election under section 6015(c) is invalid, however, if the Secretary demonstrates that the requesting spouse had actual knowledge, when signing the return, of any item giving rise to a deficiency that is otherwise allocable to the nonrequesting

---

[11]The term "Secretary" means "the Secretary of the Treasury or his delegate", sec. 7701(a)(11)(B), and the term "or his delegate" means "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context", sec. 7701(a)(12)(A).

[12]In addition, the requesting spouse's proportionate share of the deficiency shall be increased by the value of any disqualified asset transferred to her by the nonrequesting spouse.  Sec. 6015(c)(4).

spouse.[13]  Sec. 6015(c)(3)(C).  In cases involving erroneous deductions, an individual is deemed to have actual knowledge of an item giving rise to a deficiency if she has actual knowledge of the factual basis for the denial of the deductions.  King v. Commissioner, 116 T.C. 198, 204 (2001).  Although the requesting spouse bears the burden of proving the portion of the deficiency that is properly allocable to her, see sec. 6015(c)(2), the Commissioner bears the burden of proving that the requesting spouse had actual knowledge of any items giving rise to the deficiency,  sec. 6015(c)(3)(C).

2.  Reasonableness of Respondent's Position

Respondent contends that the position taken in his answer to petitioner's petition was substantially justified because the information available to the Appeals officer at the time "showed that petitioner had knowledge of and had been involved with the Hoyt organization to some degree", and petitioner had not verified Mr. Bulger's death by providing a death certificate. Respondent further contends that his position was substantially justified because, without further factual development, it was impossible to determine whether petitioner had actual knowledge, to confirm that no disqualified assets had been transferred to

---

[13]An election under sec. 6015(c) is also invalid if the Secretary demonstrates that assets were transferred between the individuals filing the joint return as part of a fraudulent scheme.  Sec. 6015(c)(3)(A)(ii).

petitioner, and to confirm that no assets had been transferred between petitioner and Mr. Bulger as part of a fraudulent scheme. Respondent also argues that although the facts available to him when the answer was filed indicated that the partnership investments were made jointly, the deficiencies at issue could not be allocated between petitioner and Mr. Bulger under section 6015(d) because the parties disagreed about whether and to what extent the investment in SGE was attributable to petitioner.

Respondent's argument that he lacked sufficient information to accept petitioner's representations regarding section 6015(c) and that the lack of information was somehow petitioner's fault is unsupported by the record for purposes of this motion.  In petitioner's statement of disagreement dated September 14, 2001, appealing the Service's denial of relief under section 6015, petitioner stated that she had no knowledge or reason to know of the true nature of the investment or that the deductions were erroneous, and she provided respondent with a detailed statement in support of her request for relief under section 6015.[14]  On April 10, 2002, in a letter supplementing her appeal, petitioner reiterated that she was not involved in the partnership transactions and "certainly had no substantive knowledge of the

---

[14]A party's statement, if credible, is evidence on which the finder of fact may rely to establish a relevant fact.  In this case, there is nothing in the record to suggest that petitioner's statement regarding her lack of actual knowledge was not credible.

underlying circumstances that caused the deductions to be denied". Petitioner also informed respondent that she had documentation to support her contentions and offered to provide respondent additional information upon request. In her petition, which was filed on March 10, 2003, petitioner reiterated that she had no actual knowledge of the factual circumstances that made the partnership items unallowable, and she included another recitation of supporting facts. In her petition, petitioner also notified respondent of Mr. Bulger's death. On April 14, 2003, more than 2 weeks before the filing of respondent's answer, petitioner provided respondent with a copy of Mr. Bulger's death certificate.

In his answer, which was filed on May 1, 2003, respondent denied petitioner's representation that Mr. Bulger had died, even though respondent had received a copy of Mr. Bulger's death certificate before the answer was filed. In his answer, respondent also denied that petitioner was entitled to any section 6015(c) relief. Neither position was reasonable under the facts and circumstances of this case.

Respondent has consistently maintained that the partnership investment made by petitioner and Mr. Bulger was a joint investment, but he made no effort to evaluate the effect of his joint investment position under section 6015(c) before he adopted his litigating position in this case. Respondent claims that he

did not have to evaluate the effect of his joint investment position under section 6015(c) before adopting his litigating position because petitioner did not agree that the partnership interest in question was a joint investment. Respondent's contention confuses a disagreement about the allocation that must be made under section 6015(d) with his obligation under section 6015(c) to allocate the tax liability if the requirements of section 6015(c) are met.

In this case, petitioner properly elected to have the deficiencies at issue allocated between herself and Mr. Bulger as required by section 6015(c)(3). By the time petitioner made her election, respondent had already conducted an audit of petitioner's tax returns and an extensive examination of the Hoyt organization and had obtained extensive information regarding petitioner's claim for relief under section 6015. Respondent's argument in his response to petitioner's motion that he needed more information from petitioner to evaluate whether petitioner was somehow disqualified by section 6015(c)(3)(A)(ii) or (C) from making an election under section 6015(c) simply does not ring true. Respondent's litigating position as summarized in his answer did not make any allegation regarding section 6015(c)(3)(A)(ii) or (C);[15] respondent simply denied that he had

[15]The answer did deny, on the basis of lack of knowledge or information, the representation in the petition as to sec.
(continued...)

erred in determining that petitioner did not qualify for an allocation under section 6015(c).

Respondent's litigating position that petitioner did not satisfy the marital status requirement of section 6015(c)(3)(A)(i) was not reasonable because respondent had received a copy of Mr. Bulger's death certificate more than 2 weeks before respondent's answer was filed. Respondent's litigating position that petitioner had actual knowledge of the item giving rise to the deficiency within the meaning of section 6015(c)(3)(C) was also not reasonable because respondent failed to analyze the applicable legal principles and the factual information he possessed before he adopted his position.

When respondent's answer was filed on May 1, 2003, the Service had already entered into a settlement agreement with Mr. Hoyt and was well aware of the basis for adjusting the Hoyt partnership items at issue in this case. See River City Ranches #1, Ltd. v. Commissioner, T.C. Memo. 2003-150, affd. in part, revd. in part and remanded 401 F.3d 1136 (9th Cir. 2005); Mekulsia v. Commissioner, T.C. Memo. 2003-138, affd. 389 F.3d 601 (6th Cir. 2004); Durham Farms #1, J.V. v. Commissioner, T.C. Memo. 2000-159, affd. 59 Fed. Appx. 952 (9th Cir. 2003); Shorthorn Genetic Engg. 1982-2, Ltd. v. Commissioner, T.C. Memo.

---

[15](...continued)
6015(c)(3)(C); that is, that petitioner had no actual knowledge.

1996-515; Bales v. Commissioner, T.C. Memo. 1989-568.  Moreover, it was a matter of public record when respondent adopted his litigating position that Mr. Hoyt had overstated the number and value of cattle sold to the partnerships.[16]  See, e.g., Mora v. Commissioner, 117 T.C. 279, 292 (2001).

In King v. Commissioner, 116 T.C. at 204, we held that "the proper application of the actual knowledge standard in section 6015(c)(3)(C), in the context of a disallowed deduction, requires respondent to prove that petitioner had actual knowledge of the factual circumstances which made the item unallowable as a deduction."[17]  In other words, respondent had to prove that petitioner knew the Hoyt organization had an insufficient number of cattle to sustain the partnership deductions claimed on the joint return and knowingly claimed improper deductions.  Nothing in the record indicates, however, that respondent made any reasonable effort to identify the grounds for the disallowance of the Hoyt partnership losses and credits petitioner and Mr. Bulger claimed, or to evaluate his ability to prove that petitioner had actual knowledge of the factual circumstances that caused the

_____

[16]By May 1, 2003, Mr. Hoyt had been indicted, convicted, and sentenced for his fraudulent activities with respect to the Hoyt partnerships.

[17]In our Opinion in Mora v. Commissioner, 117 T.C. 279 (2001), which we filed on Dec. 17, 2001, we rejected the Commissioner's argument that the actual knowledge standard articulated in King v. Commissioner, 116 T.C. 198 (2001), should not apply to investors in Hoyt limited partnership cases.

disallowance of the Hoyt partnership items before taking his litigating position in this case.  Respondent, who has the burden of proving actual knowledge under section 6015(c)(3)(C), should have meaningfully evaluated whether he could prove that petitioner had actual knowledge by taking into account the information petitioner supplied, the extensive audit and litigating history regarding the Hoyt organization and the Hoyt partnerships, and the specific information regarding the manner in which the Hoyt organization operated the Hoyt partnerships, including the ones in which petitioner and Mr. Bulger had invested.  The record does not indicate that respondent considered any of the information that was available to him in April 2003 before adopting his litigating position, other than the fact that petitioner and Mr. Bulger had made a joint investment in SGE.  Respondent's failure to evaluate the information in his possession and its effect on his ability to prove that petitioner had actual knowledge of the items giving rise to the deficiencies cannot be rationalized.  We conclude that respondent's litigating position regarding actual knowledge was not reasonable or justified.  See Stieha v. Commissioner, 89 T.C. 784, 791 (1987) (Commissioner's lack of diligence in evaluating impact of recent court opinions not substantially justified).

Respondent's failure to properly analyze petitioner's marital status under section 6015(c)(3)(A)(i)(I) and the actual knowledge standard under section 6015(c)(3)(C) is not the only defect in respondent's litigating position, however.  If respondent had made any reasonable effort to make an allocation under section 6015(c) consistent with his position that petitioner and Mr. Bulger's investment in SGE was a joint investment, he would necessarily have allocated the Hoyt partnership items between petitioner and Mr. Bulger in accordance with their respective ownership interests.  If respondent had actually made a calculation before adopting his litigating position, he would have realized that petitioner was entitled to at least some relief under section 6015(c).  If respondent had conceded in his answer that petitioner was entitled to section 6015(c) relief, the concession might have enabled the parties to settle this case at a much earlier date.[18]

---

[18]Although respondent's calculation would not have arrived at the same tax liability numbers as those reflected in the settlement because of respondent's interpretation of sec. 6015(d)(3)(B), see Hopkins v. Commissioner, 121 T.C. 73 (2003), the computation would nevertheless have confirmed that petitioner was entitled to sec. 6015(c) relief.  When our Opinion in Hopkins, rejecting respondent's interpretation of sec. 6015(d)(3)(B), was filed on July 29, 2003, respondent had reason to know that the application of the tax benefit rule of sec. 6015(d)(3)(B) might increase the relief available to petitioner under sec. 6015(c).  If respondent had revised his calculation at that time (approximately 3 months after his answer was filed), he would have arrived at the same allocation of tax liabilities reflected in the settlement.

3.  Conclusion

We hold that respondent's litigating position was not reasonable under the circumstances and that, therefore, it was not substantially justified.  Because respondent's position was not substantially justified, we conclude petitioner was the prevailing party as defined by section 7430(c)(4)(A).

B.  Whether Costs Claimed by Petitioner Are Reasonable

1.  Amount of Costs Claimed

Section 7430 permits a taxpayer to recover reasonable litigation costs.  Litigation costs are those costs incurred in connection with a court proceeding.  Sec. 7430(a)(2), (c)(1).  Reasonable litigation costs include, among other things, reasonable court costs and reasonable fees paid or incurred for the services of attorneys.  Sec. 7430(c)(1).

The amount of attorney's fees we may award is limited by statute and adjusted for cost of living.  Sec. 7430(c)(1)(B)(iii) (and flush language).  For purposes of this motion, the statutory rate for attorney's fees is $150 per hour.  See Rev. Proc. 2003-85, sec. 3.33, 2003-2 C.B. 1184, 1190; Rev. Proc. 2002-70, sec. 3.32, 2002-2 C.B. 845, 850.  A taxpayer may recover attorney's fees in excess of the statutory limit in the presence of one or more of the following special factors:  (1) Limited availability of qualified attorneys for the proceeding, (2) difficulty of the

issues presented in the case, or (3) local availability of tax expertise.  Sec. 7430(c)(1)(B)(iii).

Pursuant to Rule 232(d), if the parties disagree as to the amount of reasonable attorney's fees, the moving party must submit an additional affidavit which includes, in relevant part, (1) a detailed summary of the time expended by each individual for whom fees are sought, including a description of the nature of the services performed during each period of time, (2) a description of the fee arrangement with the client, (3) a statement whether a special factor exists that justifies a rate in excess of the statutory limit, and (4) any other information that will assist the Court in evaluating the award of costs and fees.

The amount of petitioner's claim for litigation costs includes the costs of professional services that were charged by her attorneys to her individual account and her share of group fees that were charged to common accounts for the benefit of several Hoyt investor clients, including petitioner.  The fees and costs petitioner claims are summarized as follows:

| Attorney/Item | Hours expended | Hourly rate | Total cost |
|---|---|---|---|
| Wendy Pearson | 4.1 | $195 | $799.50 |
| Terri Merriam | 6.4 | 195 | 1,248.00 |
| Jennifer Gellner | 12.5 | 150 | 1,875.00 |
| Jaret Coles | 6.5 | 125 | 812.50 |
| Legal assistants | 8.2 | 75 | 615.00 |
| Contract assistance | 6.5 | 50 | 325.00 |
| Share of group fees and costs[1] | -- | -- | 6,354.05 |
| Total fees and costs | | | 12,029.05 |

[1]The amount petitioner claims for her share of the group fees and costs represents charges to separate accounts for two groups of Hoyt investor clients and includes attorney's fees billed at an hourly rate of $195 for some of petitioner's attorneys and the costs of contract assistance, online research, postage, copies, and the attorneys' hotels, meals, and parking during the 2004 trials of the sec. 6015 issue, as well as the costs of work performed by legal assistants.

2.  The Parties' Arguments

Respondent contends that the costs petitioner claims are unreasonable because the hourly rate charged by some of petitioner's attorneys exceeds the statutory maximum, and petitioner has not shown that any of the special factors in section 7430(c)(1)(B)(iii) that justify a higher rate applies. Respondent further argues that costs petitioner claims for her share of the group fees are not reasonable because (1) the method of billing does not properly account for the time expended or the hourly rate at which the work was performed, and (2) the fees were charged for work that contributed to the resolution of

clients' cases other than petitioner's and, therefore, were not "incurred in connection with" petitioner's court proceedings as required by section 7430(a).

Petitioner contends that an "informal survey" of local attorneys shows that the prevailing hourly rate for attorneys specializing in Federal tax practice in the Seattle, Washington, area is between $225 and $350 and that billing at an hourly rate that is less than the customary rate for similar work is a factor that supports the reasonableness of the attorney's fees. With respect to her share of the group fees, petitioner contends that the group fees were charged to a group of Hoyt investor clients, all of whom had pending section 6015 claims, for work relating to common legal and factual issues that directly affected or contributed to the resolution of each client's case. Petitioner further contends that the group fee arrangement allowed the Hoyt investor clients to obtain professional advice and assistance at a reduced cost, that any services related to the development of factual issues unique to a particular client were charged only to the individual client, and that no client was charged for work that did not directly benefit the client's case.

3. <u>Hourly Rate</u>

We first decide whether the hourly rate for the attorney's fees is reasonable. In the absence of proof that a special factor applies, petitioner may not recover attorney's fees in

excess of the statutory limit.  See sec. 7430(c)(1)(B)(iii).
Petitioner does not argue, and has otherwise failed to
demonstrate, that there was a limited availability of qualified
attorneys or attorneys with tax expertise to represent her in
this case or that the issues presented were sufficiently
difficult to support her claim for an enhanced hourly rate.  That
petitioner's attorneys billed her and the other Hoyt investor
clients for professional services at a lower rate than the local
customary rate does not establish that the fees petitioner claims
are reasonable.[19]  We conclude, therefore, that petitioner may
not recover attorney's fees in excess of $150 per hour.  See id.

With respect to the attorney's fees and costs charged to
petitioner's individual account, we award petitioner $615 for
work performed by Ms. Pearson[20] and $960 for work performed by
Ms. Merriam.[21]  Because Ms. Gellner's and Mr. Coles's hourly
rates do not exceed the statutory limit, we find those fees are
reasonable and award petitioner $1,875 and $812.50 for Ms.
Gellner's and Mr. Coles's professional services, respectively.

---

[19]The existence of a prevailing hourly rate in the relevant
area that exceeds the statutory rate is not a special factor.
Pierce v. Underwood, 487 U.S. 552, 571-572 (1988); Foothill Ranch
Co. Pship. v. Commissioner, 110 T.C. 94, 102 (1998).

[20]We compute Ms. Pearson's fees as follows:  4.1 hours
multiplied by $150 hourly rate equals $615.

[21]We compute Ms. Merriam's fees as follows: 6.4 hours
multiplied by $150 hourly rate equals $960.

Respondent does not object to the reasonableness of the costs petitioner claims for the services of legal and contract assistants that were charged to her individual account. Consequently, we award petitioner those costs of $940.[22]

4.    Allocation of Group Fees

We next decide whether the attorney's fees and costs for petitioner's share of the group fees are reasonable and were reasonably allocated among petitioner and the other Hoyt investor clients.  Section 7430(a) authorizes an award of reasonable litigation costs incurred in connection with a court proceeding brought by or against the United States with respect to the determination, collection, or refund of any tax.  In order for costs, including attorney's fees, to qualify as reasonable litigation costs, they must come within the relevant definition, sec. 7430(c)(1), and they must be incurred in connection with a qualifying proceeding.

Petitioner's attorneys represent many Hoyt investors.  It is not surprising or unreasonable that they would perform certain legal work for the common benefit of similarly situated clients.

---

[22]This figure includes $615 for legal assistants and $325 for contract assistance.

Only fees for the services of an individual who is admitted to practice before this Court or the Internal Revenue Service may be awarded as attorney's fees.  Sec. 7430(c)(3)(A).  We award fees for work performed by legal assistants, therefore, as costs rather than as attorney's fees.  See Fields v. Commissioner, T.C. Memo. 2002-320; O'Bryon v. Commissioner, T.C. Memo. 2000-379.

Under certain circumstances, it may be both efficient and economical for an attorney to allocate legal research and other legal work that benefit several clients with the same or similar issues equitably among those clients as long as the clients agree, the fees and costs are reasonable, and the attorney appropriately allocates the common legal work. See, e.g., Minahan v. Commissioner, 88 T.C. 492 (1987), in which we allocated common costs among several taxpayers who were represented by the same attorneys under an agreement that provided for the sharing of costs. Morever, legal work that benefits multiple clients is no less relevant to a court proceeding than work performed solely for one client. If the work is performed for multiple clients and enables an attorney to properly represent a particular client in the court proceeding described in section 7430, it would seem to satisfy the section 7430(a) requirement that the costs for such work be "incurred in connection with" the proceeding.

Petitioner's counsel produced billing records for accounts of two Hoyt investor client groups seeking relief from joint and several liability to substantiate petitioner's share of the group fees. The billing records for both groups identify the attorneys who performed work on the section 6015 cases and set forth the time expended by each attorney, the attorneys' hourly rates, and the nature of the work performed. Petitioner's counsel contend

that one group of Hoyt investors (the general group) ranged in size from 97 to 75 members during the 14-month period that petitioner participated in the group fee arrangement and that petitioner's pro rata share of the general group's fees was computed by dividing the total monthly charges equally among all members of the group.[23]  Petitioner's counsel further contend that there existed a separate group of nine Hoyt investors including petitioner (the litigation group) whose cases were set for trial during the Court's February 2004 trial session and that the nine Hoyt investors shared the total billing costs of trial preparation equally, with the exception of approximately 15 hours that were allocated among the general group.  In addition, petitioner's counsel produced a spreadsheet demonstrating how the total monthly fees incurred by the general group of Hoyt investor clients in January 2004 were divided equally among petitioner and the other participants.

After reviewing the record, we conclude that petitioner's share of the group fees was incurred in connection with her section 6015 proceeding, that petitioner benefited from the work her attorneys performed for both groups of Hoyt investor clients, and that petitioner is entitled to recover a reasonable share of the fees and costs she incurred as a member of the group.  With

_____

[23]The billing records of the general group's account appear to be missing the first page for the month of December 2003.  See infra note 26.

respect to the litigation group of Hoyt investor clients, we award petitioner $3,577.22, which represents a one-ninth share of the attorney's fees adjusted to an hourly rate of $150 and costs.[24]

The problem with petitioner's attempt to recover her allocable portion of the general group's fees and costs is that the information provided does not enable us to fully evaluate the reasonableness of the group fees or the reasonableness of the allocation. The composition of the general group of Hoyt investors varied from month to month as clients chose to have their claims dismissed or became widowed and divorced and sought relief only under section 6015(c). Because the billing records

---

[24]We compute petitioner's share of the litigation group's fees and costs as follows: $37,667 (total fees and costs incurred by litigation group), minus $13,962 (total attorney's fees incurred at $195 hourly rate), plus $10,740 (total attorney's fees incurred at $195 hourly rate adjusted to hourly rate of $150), minus $2,250 (15 hours of work performed at $150 hourly rate), divided by 9 (members of litigation group), equals $3,577.22.

We subtracted 15 hours of work performed at an hourly rate of $150 in computing the total amount of fees and costs incurred by the litigation group because petitioner's counsel stated that approximately 15 billable hours shown on the billing records of the litigation group's account were actually charged to members of the general group. Because petitioner's counsel have failed to identify the nature of the work or hourly rate for those 15 hours, we assume that they were billed at the highest hourly rate allowed. Further, we do not add any charges for the 15 hours to the total costs and fees incurred by the general group of Hoyt investors in computing petitioner's share of that group's fees and costs because we lack any information about the 15 hours of work performed.

for both petitioner's and the general group's accounts lack detailed information regarding the number of Hoyt investor clients who participated in the fee arrangement in each of the relevant months, it is impossible to verify that the generic monthly charges for group fees that appear on the records for petitioner's individual account are reasonable and were reasonably allocated among petitioner and the other Hoyt investor clients.[25]

Petitioner bears the burden of proving that the amount of costs claimed is reasonable. See Rule 232(e); Powers v. Commissioner, 100 T.C. 457, 491 (1993), affd. in part, revd. in part and remanded 43 F.3d 172 (5th Cir. 1995). We conclude that because petitioner has failed to fully substantiate her claim for a share of the general group's fees, she is entitled to recover only a portion of the amount she claims. For purposes of computing the amount petitioner is entitled to recover, we shall assume that the composition of the general group of Hoyt investor clients remained constant at its greatest size, 97, throughout the 14-month period that petitioner participated in the group fee arrangement. Accordingly, we award petitioner $1,348.69, which

---

[25]Had petitioner produced documentation for each month that showed the number of clients who shared the fees, such as a spreadsheet similar to that produced for the January 2004 fee allocation, we could have properly determined whether the amount of costs petitioner claims was reasonable.

represents a one-ninety-seventh share of the general group's attorney's fees adjusted to an hourly rate of $150 and costs incurred on or after March 15, 2003.[26]

    5. Conclusion

    To summarize, we award petitioner the following attorney's fees and costs:[27]

---

[26]Although the billing records submitted for the general group's account were incomplete, see supra note 23, we were able to construct a complete set of billing records using the records submitted in related cases involving motions for litigation costs that were filed by other members of the general group of Hoyt investors. See Foy v. Commissioner, T.C. Memo. 2005-116; Owen v. Commissioner, T.C. Memo. 2005-115. We compute petitioner's share of the general group's fees and costs as follows: $152,710.78 (fees and costs incurred by the general group of Hoyt investors on or after Mar. 15, 2003), minus $94,848 (attorney's fees incurred at an hourly rate of $195 on or after Mar. 15, 2003), plus $72,960 (attorney's fees incurred at $195 hourly rate on or after Mar. 15, 2003, adjusted to hourly rate of $150), divided by 97 (members of Hoyt investor group), equals $1,348.69.

[27]Because respondent makes no argument as to the reasonableness of his position regarding his denial of relief from joint and several liability under sec. 6015(b) and (f), we do not apportion petitioner's award of attorney's fees according to whether respondent's positions with respect to sec. 6015(b), (c), or (f) were substantially justified. See Swanson v. Commissioner, 106 T.C. 76, 102 (1996); Rowe v. Commissioner, T.C. Memo. 2002-136; O'Bryon v. Commissioner, T.C. Memo. 2000-379.

| Attorney/Item | Hours expended | Hourly rate | Total cost |
|---|---|---|---|
| Wendy Pearson | 4.1 | $150 | $615.00 |
| Terry Merriam | 6.4 | 150 | 960.00 |
| Jennifer Gellner | 12.5 | 150 | 1,875.00 |
| Jaret Coles | 6.5 | 125 | 812.50 |
| Costs (legal and contract assistance) | -- | -- | 940.00 |
| Share of group fees and costs[1] | -- | -- | 4,925.91 |
| Total fees and costs | | | 10,128.41 |

[1]Petitioner's award for her share of group fees and costs includes $3,577.22 (share of fees from the litigation group) and $1,348.69 (share of fees from the general group).

C.  Conclusion

We have carefully considered all remaining arguments made by the parties for results contrary to those expressed herein, and, to the extent not discussed above, we find those arguments to be without merit.

To reflect the foregoing,

An appropriate order and decision will be entered.